United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-2978

United States of America,     *

    *

       Appellee,     *

    *    Appeal from the United States

   v.     *    District Court for the

    *    District of South Dakota.

Willie Wright,     *

    *

       Appellant.     *

_____

Submitted: March 12, 1997
Filed: July 10, 1997

_____

Before MAGILL[1] and MURPHY, Circuit Judges, and GOLDBERG,[2] Judge.

_____

MAGILL, Circuit Judge.

Willie Wright appeals his conviction for abusive sexual contact and aggravated sexual abuse. Wright argues that: (1) the evidence was not sufficient to sustain his

---

[1]The Honorable Frank J. Magill was an active judge at the time this case was submitted and assumed senior status on April 1, 1997, before the opinion was filed.

[2]THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

conviction; (2) the district court[3] abused its discretion in allowing leading questions

---

[3]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

during the government examination of the victim; (3) the emergency room physician's testimony as to his sexual abuse examination was improper bolstering; (4) the district court both improperly allowed a government expert to testify as to hearsay and prohibited the defense from examining the expert regarding the victim's prior inconsistent statements for the purpose of impeaching the victim; and (5) he was denied a fair trial by a juror's misconduct in not disclosing the juror's relationship to a tribal children's court judge. We affirm.

## I.

This case involves the sexual abuse of a four-year-old girl. The girl, A. Doe, lived with her mother, I. Doe, and her seven siblings on the Rosebud Indian Reservation in South Dakota. Wright is the biological father of I. Doe's youngest child and A. Doe's baby brother. At the time of the abuse, I. Doe and Wright's relationship had ended and Wright was not living with the family. However, during late October and early November of 1994, Wright babysat the children for I. Doe.

On November 2, 1994, A. Doe first reported the abuse to a Head Start teacher's aide, Teresa Farmer. A. Doe protested having to go home, and when Farmer asked A. Doe why she did not want to go home, A. Doe stated that her baby brother's dad was mean, used bad words, threw things, and touched her. Trial Tr. at 40. A. Doe pointed to her vagina when asked by Farmer where she was touched. Id.

Following the initial disclosure, I. Doe, also a Head Start worker, was summoned, and A. Doe again recounted the touching to I. Doe. A. Doe told I. Doe that Wright had "'touched me in a bad place'" and, when asked where, pointed to her vagina. Id. at 68; see also id. at 87. On the way home from Head Start, A. Doe also told I. Doe that "'[h]e touched me with his pee-pee like [T. Doe's] pee-pee.'" Id. at 73. T. Doe is A. Doe's older brother. When asked where he touched her, A. Doe told I. Doe, "'On my pee-pee, on my middle.'" Id.

Once at home, I. Doe confronted Wright with A. Doe's accusations. Wright denied the accusations and stated, "'[o]h, I don't care, nobody is going to believe a little kid, anyway.'" Trial Tr. at 72 (testimony of I. Doe); see also id. at 377.

On November 3, 1994, A. Doe was examined by Dr. Luis Lopez in the Indian Health Services Hospital Emergency Room. A. Doe told Lopez that Wright "'went into the room where she was sleeping, removed the covers, removed her pants, and touch[ed] her on her pee-pee. She also refer[ed] that he also put his pee-pee into her pee-pee, and that she told him that it hurt.'" Id. at 102 (reading from emergency room record); see also id. at 96-97. Dr. Lopez's medical examination revealed no physical evidence of abuse.

On November 4, 1994, A. Doe again recounted the abuse to Joanne Yankton, a State of South Dakota Child Protection worker. Yankton asked A. Doe if anyone had hurt her or did a bad touch to her. A. Doe pointed to the vagina on a picture of a girl and said "'Willie did.'" Id. at 218-19. At this interview, A. Doe also stated that three times Wright had stuck two fingers inside her. Id. at 219.

On September 21, 1995, a three-count indictment was filed against Wright. Wright was charged with one count of abusive sexual contact and two counts of aggravated sexual abuse. On October 2, 1995, Wright was arrested, and at his arraignment on October 12, 1995, Wright pled not guilty to all three counts.

Before trial, on February 24, 1995, and February 9, 1996, Margaret Pier, a licensed professional counselor and school psychologist, interviewed A. Doe. A. Doe was referred to Pier by the Federal Bureau of Investigation (FBI). During the first appointment, A. Doe and Pier prepared a picture of A. Doe's family. The picture was drawn by Pier with A. Doe directing Pier. Upon the top of the drawing Pier wrote A. Doe's statement, "'He moved because he touched my bad part. I started telling mom and she started fighting.'" Id. at 312.

At trial, the jury heard A. Doe testify that Wright touched her:

Q[the prosecutor]    When you were home with Willie when he was baby-sitting, did he do something to you that you didn't like?

A[A. Doe]       Yeah.

Q    Can you remember what he did to you?

A    Unh-unh.

Q    Did he touch you anyplace?

A    Yeah.

Q    Where did he touch you?

A    In the private.

Q    In your private parts?

A    Yeah.

Q    [A. Doe], I'm going to show you a picture of a girl, and she's maybe a little bigger than you are, which has been marked as Exhibit 4.  And I'm going to ask you to pretend that this girl is you.
     Can you take this magic marker and mark on Exhibit 4 where Willie touched you?

A    (Witness marking exhibit).

Q    Okay.  Make a black mark there where you just touched.

A    (Witness marking exhibit).

Q    And what do you call the part where you just made the mark?

A    Middle.

    MR. SEILER [the prosecutor]:  Your Honor, we'd ask the record to reflect that the witness, on Exhibit 4, has made a black mark in the vaginal area, and we would offer Government's Exhibit 4.

Id. at 185-86.


The jury also heard A. Doe testify that Wright touched his penis and her vulva:

Q[the prosecutor]    Okay.  Did he touch you down there with his pee-pee?

A[A. Doe]    Yeah.

Q    I'm going to show you another drawing, [A. Doe], which has been marked as Government Exhibit 3.  And I'm going to ask you to pretend that this is Willie.

    Can you take this magic marker and put a circle around the part that Willie touched you with?

A    (Witness marking exhibit)

    MR. SEILER [the prosecutor]:  Your Honor, we'd ask the record to reflect that the child has circled the penis of the anatomically correct drawing, and we would offer Government's Exhibit 3 at this time.

Id. at 186-87; see also id. at 188-89.

-9-

On April 24, 1996, the jury returned a guilty verdict on Count I abusive sexual contact (intentional touching of genitalia with hand) and on Count III aggravated sexual

abuse (contact between penis and vulva).  Wright was found not guilty of Count II aggravated sexual abuse (penetration of genitalia with finger).  Wright's motion for a new trial was denied, and he was sentenced to 189 months.  Wright appeals.

## II.

Wright first argues that the evidence was not sufficient to convict him.  Wright's two pronged argument can be summarized as follows: (1) because of the lack of physical or other evidence, the government's case rests on the testimony of A. Doe, who cannot be believed; and (2) because the jury acquitted Wright on Count II (penetration of genitalia with finger) it is logically inconsistent to convict him on count I (touching genitalia with hand). We disagree.

The Federal Constitution's Due Process Clause protects "the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Our task in reviewing a claim of insufficiency of the evidence is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  We will draw all reasonable inferences from the evidence in favor of the prosecution. See United States v. Larson, 110 F.3d 620, 624 (8th Cir. 1997).

Wright's first argument amounts to an assertion that the jury erred in weighing credibility. Wright asserts that the jury did not properly consider both A. Doe's suggestibility after being repeatedly questioned in unrecorded interviews and A. Doe's inconsistencies in remembering such details as whether or not she had school on the day of the abuse or what time of day the abuse took place. However, despite Wright's assertion that "'nobody is going to believe a little kid, anyway,'" Trial Tr. at 72 (testimony of I. Doe); see also id. at 377, the jury was free to do just that.

This Court has repeatedly made clear that "[i]t is the sole province of the jury to weigh the credibility of a witness." United States v. Martinez, 958 F.2d 217, 218 (8th Cir. 1992); see also United States v. Robinson, 110 F.3d 1320, 1323-24 (8th Cir. 1997); United States v. Smith, 104 F.3d 145, 148 (8th Cir. 1997); United States v. Gordon, 974 F.2d 97, 100 (8th Cir. 1992); United States v. Fortenberry, 973 F.2d 661, 664 (8th Cir. 1992); United States v. Thompson, 972 F.2d 201, 203 (8th Cir. 1992); Bachman v. Leapley, 953 F.2d 440, 441 (8th Cir. 1992). The jury heard testimony regarding the suggestibility of children. See Trial Tr. at 338-42 (testimony of the defense's expert Dr. Steven Manlove); id. at 288-90 (testimony of the government's expert Margaret Pier). The jury also heard testimony regarding A. Doe's inconsistencies in remembering such details as whether or not she had school on the day of the abuse or what time of day the abuse took place. See id. at 187 (testimony of A. Doe that the touching took place after school when the rest of the kids were at school); id. at 96, 102 (testimony of Dr. Lopez that A. Doe told him that Wright touched her Friday morning, a day when there was no school); cf. id. at 191 (testimony of A. Doe that it happened around the 4th of July with loud explosions and fireworks going on around). Nevertheless, after hearing all of the testimony, the jury was free to give whatever weight they chose to A. Doe's testimony. See Martinez, 958 F.2d at 218.

Moreover, had A. Doe been the government's sole witness against Wright, it would have been perfectly proper for the jury to credit A. Doe's testimony and convict Wright. See id.; cf. People v. McGravey, 14 F.3d

-13-

1344, 1346-47 (9th Cir. 1994) (upholding jury instruction that no corroboration of minor victim's testimony is necessary if the victim is believed beyond a reasonable doubt); <u>Sullivan v. Minnesota</u>, 818 F.2d 664, 666 (8th Cir. 1987) (holding that victim's testimony, which included detailed description of incident, demonstration of act with anatomically correct dolls, and third parties' testimony that victim exhibited masturbatory behavior following alleged incident was sufficient evidence to supported defendant's state conviction for first-degree intra familial sexual abuse involving four-year-old victim).

Second, Wright argues that he could not have used his hand to commit the act charged in Count I (intentional touching of genitalia with hand) without also using his fingers as charged in Count II (penetration of genitalia with finger).[4]  We cannot agree.

---

[4]To bolster this argument, Wright points to A. Doe's in-court testimony in which she states that Wright did not touch her with his fingers:

Q[the prosecutor]     When he touched you, [A. Doe], down there, how did he touch you?  What did he touch you with?

A[A. Doe]     I don't know.

Q     Did he touch you down there with his fingers?

A.     Unh-unh.

Q     Okay.  Did he touch you down there with his pee-pee?

A     Yeah.

Trial Tr. at 186.  Again A. Doe testified:

Q     And he touched you with his pee-pee?

A     Yeah.

Q     Did he touch you with his fingers down around your middle?

A     Unh-unh.

Id. at 189.

We note that the jury was free to credit any specific aspect of A. Doe's description of the abuse while simultaneously discounting any other aspect.  See United

Notwithstanding Wright's argument, a conviction on Count I and an acquittal on Count II are not logically inconsistent.  Wright could have touched with his hand without penetrating with his fingers.

Following our review of the record, we hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## III.

Wright next argues that, considering children's general suggestibility and the lack of a specific showing of necessity or reluctance to testify, the district court abused its discretion by allowing the government to ask leading questions of A. Doe pursuant to Federal Rule of Evidence 611(c).  We disagree.

Based on the record, we see no reason to second-guess the district court's evaluation of A. Doe's ability to testify.  See United States v. Rossbach, 701 F.2d 713, 718 (8th Cir. 1983) (approving use of leading questions where fifteen- and seventeen- year-old victims were hesitant to answer questions and had been threatened); United States v. Nabors, 762 F.2d 642, 651 (8th Cir. 1985) ("The trial court's ruling deserves deference because the court was in the best position to evaluate the emotional condition of the child witness and his hesitancy to testify."); United States v. McGovern, 499

_____

States v. NB, 59 F.3d 771, 779 (8th Cir. 1995); cf. United States v. St. John, 851 F.2d 1096, 1099 (8th Cir. 1988) (upholding conviction where child at times denied and at times acknowledged abuse).

F.2d 1140, 1142 (1st Cir. 1974) ("[L]eading questions sometimes must be tolerated if what the witness knows is ever to become available:  the witness' memory may be temporarily exhausted; the witness may be disoriented or incapable of concentration; the witness may misunderstand what the questioner wants to know.").

**IV.**

Wright argues that the district court permitted improper bolstering of the child's allegations. This allegedly took place when the government asked Dr. Lopez what he had written on the emergency room form as his diagnosis. Dr. Lopez responded to this question regarding his diagnosis by stating, "Sexual molestation exam." Wright asserts that, because Dr. Lopez found no physical evidence of abuse, his diagnosis, or medical conclusion, could only be based on A. Doe's story. Thus, Wright concludes that applying the term "diagnosis" to A. Doe's story improperly bolsters the truthfulness of her account. We disagree.

First, Wright made no objection to the admission of Dr. Lopez's testimony at trial. Therefore, its admission is reviewed for plain error only. See United States v. Roach, 28 F.3d 729, 732 (8th Cir. 1994).

Second, Dr. Lopez did not express an improper opinion as to whether A. Doe was telling the truth. Cf. United States v. Azure, 801 F.2d 336, 339-341 (8th Cir. 1986) (holding that it is an abuse of discretion to allow a doctor to give his opinion on the believability of the victim's story); United States v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993) (holding that a doctor may not pass judgment on the victim's truthfulness in guise of medical opinion, because it is the jury's function to decide credibility). Instead, Dr. Lopez merely testified that he conducted a "Sexual molestation exam" and that in his opinion the lack of medical evidence was not inconsistent with molestation. Whitted, 11 F.3d at 785 ("A doctor can also summarize the medical evidence and express an opinion that the evidence is consistent or

inconsistent with the victim's allegations of sexual abuse.").

## V.

Wright has two objections with regard to the testimony of the government's psychological expert, Margaret Pier.  First, after the district court ruled that A. Doe's account of her abuse to Pier was inadmissable hearsay, Wright argues that the district

court erred by allowing a portion of A. Doe's account to be admitted when the government questioned Pier about a drawing of A. Doe's family.  Second, Wright argues that the district court erred in denying Wright's motion for the limited admission of Pier's testimony, under Federal Rule of Evidence 105, for the purpose of impeaching A. Doe with prior inconsistent statements and showing A. Doe's suggestibility.  We disagree.

At trial, Wright made no objection to the admission of the hearsay statement; therefore, we review its admission for plain error only.  See Roach, 28 F.3d at 732.  Furthermore, Wright opened the door to the admission of the statement.  The statement, "'He moved because he touched my bad part.  I started telling mom and she started fighting,'"  was made by A. Doe and written by Pier on the top of a drawing of A. Doe's family.  Trial Tr. at 312.  Although admitted by the government, Wright had previously made extensive use of the drawing while cross-examining both A. Doe and Pier. Id. at 202-03, 291, 294-95, 307-08.  At the close of Wright's cross-examination of Pier, the trial court asked Wright, "You did quite a bit of reference to a drawing that neither side has offered in evidence.  Does either side wish to offer that?"  Id. at 308.  The government accepted the court's invitation and the drawing was admitted, without objection, as Defendant's Exhibit A during the government's redirect examination of Pier. Id. at 311.  Once admitted, Pier read the hearsay statement from the exhibit.  Id. at 312.  With this in mind, and considering the other evidence of Wright's guilt, we hold that the hearsay admission was at most harmless error.  See United States v. DeAngelo, 13 F.3d

1228, 1233 (8th Cir. 1994) (holding that harmless error when admission did not affect substantial rights of defendant and had at most a slight influence on the verdict).

Second, the district court properly denied Wright's motion to examine Pier regarding A. Doe's prior inconsistent statements because, when A. Doe testified prior to Pier, Wright did not give A. Doe an opportunity to explain or deny the inconsistent statements as required by Federal Rules of Evidence 613(b). <u>United States v. Roulette</u>,

75 F.3d 418, 423 (8th Cir.) ("Extrinsic evidence of prior inconsistent statements may not be used to impeach a witness under Federal Rule of Evidence 613(b) unless the witness is given the opportunity to explain or deny the statements."), cert. denied, 117 S. Ct. 147 (1996). Furthermore, the interests of justice do not necessitate that we excuse Wright's compliance with this requirement. See Fed. R. Evid. 613(b).

Lastly, by limiting Pier's testimony, the district court did not improperly deny Wright the opportunity to present expert testimony on children's memory and its suggestibility.  Instead, Wright was allowed to call his own expert, Dr. Steven Manlove, for that purpose.  Cf. United States v. Rouse, 111 F.3d 561, 570-72 (8th Cir. 1997) (holding that the exclusion of additional expert testimony regarding suggestibility was harmless error because the jury had an informed basis for ultimate credibility determinations, particularly the jurors had heard lengthy testimony about expert's theory of implanted memory, interviewing techniques, and social influences on children at the time they made the accusations); Bachman v. Leapley, 953 F.2d 440, 442 (8th Cir. 1992) ("[G]eneral testimony about a victim's ability to separate truth from fantasy, the expression of an opinion on the similarities between a victim's claim and the evidence, and the comparison of behavioral and testimonial patterns of a particular victim with the behavioral patterns observed in victims in general, [are] all admissible in certain circumstances.").

**VI.**

Finally, Wright argues that, because a juror, Jerry Chasing Hawk, failed to disclose that he was the nephew of a tribal children's court judge, Wright was unable to assess the impartiality of or challenge Chasing Hawk and thus Wright's due process right to a fair trial was violated.  We disagree.

"[T]o obtain a new trial . . . a party must first demonstrate that a juror failed to answer honestly a material question on <u>voir dire</u>, and then further show that a correct response would have provided a valid basis for a challenge for cause."  <u>McDonough Power Equip., Inc. v. Greenwood</u>, 464 U.S. 548, 556 (1984).  Wright has not demonstrated that Chasing Hawk failed to answer honestly. Wright cites to the jury questionnaire which asked jurors if they were related to a "law enforcement officer." Juror Questionnaire, <u>reprinted in</u> Appellant's Addendum at B.  In making his negative response, Chasing Hawk could have honestly believe that a tribal children's court judge was not a law enforcement officer.  Because Chasing Hawk "responded truthfully to the question asked, we find no deliberate concealment on [his] part."  <u>See</u> <u>Bolin v. Black</u>, 875 F.2d 1343, 1350 (8th Cir. 1989) (junior with son on probation did not respond to question asking if family member was now incarcerated).

## VII.

Accordingly, the judgment of the district court is affirmed.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


-24-