# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1182

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Ronald Gene Kenyon, also known | * | |
| as Ronald G. Bingen, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2004
Filed: February 11, 2005

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Ronald Kenyon of three counts of aggravated sexual abuse of A.L., a child under the age of twelve, in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(A), and 2246(2)(D), and two counts of abusive sexual contact with A.L., in violation of 18 U.S.C. §§ 1153, 2244(a)(1), 2241(c), and 2246(3). On appeal, Kenyon contends that there was insufficient evidence to support his convictions. Alternatively, he argues that a new trial is required because hearsay testimony of a physician's assistant was improperly admitted under Federal Rule of Evidence 801(d)(1)(B), and evidence regarding A.L.'s prior knowledge of the male anatomy

was improperly excluded. Because we agree with Kenyon's objection to the disputed hearsay testimony, we reverse and remand for further proceedings.

## I.

A.L. was born on March 28, 1992. Since infancy, she has been in the legal custody of Robin LaRoche and Dale Middletent, whom A.L. refers to as her parents. Robin has two daughters, one of whom is Mona LaRoche. Kenyon is Mona's common-law husband, and they live together near Robin LaRoche. Robin testified that for three years preceding April 2003, Mona baby-sat for A.L. approximately two Fridays each month. On these occasions, A.L. generally stayed overnight at Kenyon's residence. On April 9, 2003, while visiting Child's Safe Place in Sioux Falls on an unrelated matter, A.L. told a physician's assistant, Renette Kroupa, that Kenyon had touched her private areas during these overnight visits.

By the time of trial, A.L. was 11 years old. She testified that Kenyon started touching her when she was eight. According to A.L., the acts occurred while she was sleeping in a bedroom belonging to R.K., a daughter of Mona and Kenyon. She testified that Kenyon entered the room at night while the girls were sleeping. A.L. testified that during the first incident, Kenyon touched her private part in the "area between [her] legs" on top of and underneath her clothes. A.L. said that on other occasions, Kenyon touched her "behind" with his hand, and attempted to put his finger inside her private part in the "front." A.L. stated that "this happened" more than ten times. She testified that during the three-year period from April 2000 to April 2003, she stayed at Kenyon's residence approximately five times each month, and that Kenyon touched her every night she stayed there.

A.L. also testified that Kenyon attempted to rape her. According to A.L., Kenyon once took off his boxer shorts and pulled her pants and underwear down to her knees. A.L. explained that Kenyon eventually was laying on top of her and

"moving up-and-down." She further stated that "his private part" touched her and "almost" went inside her. A.L. identified Kenyon's "private part" as being "between his legs." A.L. testified that when she tried to move away, Kenyon turned her so that she was facing the bed, and attempted to use his private part to touch her behind. After this incident, A.L. said she had to go to the bathroom to clean up the "wet stuff that [came] out of him." At the conclusion of her testimony, after discussing various sexual acts, A.L. testified that the last time "it happened" was the week before her meeting with Renette Kroupa on April 9, 2003.

On cross-examination, A.L. admitted that when Kenyon touched her on various occasions, his daughter R.K. was sleeping in the same bottom bed of a bunk bed, but A.L. said that R.K. never woke up or discussed the incidents with A.L. A.L. said that she tried to wake up R.K. by yelling or hitting her, but that Kenyon prevented her from doing so by covering A.L.'s mouth and holding her hands. A.L. also stated that another child was sleeping in the top bunk, and that on one occasion, another child shared the bed with A.L. and R.K. while Kenyon touched her. A.L. testified that despite her attempts to cry, fight, and yell, the other children never woke up. A.L. said she was too scared to tell anyone about Kenyon's conduct, because he threatened to kill her.

Kenyon introduced testimony regarding the number of people who were sleeping in the same bedroom with A.L. when she stayed at Kenyon's home. Mona testified that during this three-year period, there were at least three girls sleeping in the bedroom, while on some occasions there were up to five girls. On some nights, according to Mona, there were as many as four girls sleeping together on the bottom half of the bunk bed. These four girls also testified. Neither Mona nor any of these children acknowledged hearing screams or cries from A.L. or hearing any strange noises coming from the bedroom. According to the defense testimony, none of the children – two of whom were Kenyon's daughters – ever saw Kenyon enter the bedroom at night or bother A.L. in the bedroom.

Over the objection of defense counsel, the district court admitted Renette Kroupa's testimony regarding her conversation with A.L. on April 9, 2003. Kroupa recounted her discussion with A.L., which reiterated much of A.L.'s earlier trial testimony. Kroupa also offered explanations of what A.L. meant by the use of the term "private parts." During her meeting with Kroupa, A.L. used a diagram to identify her genital area as her "private part" and her buttocks as her "behind." A.L. identified Kenyon's "private part" on a diagram as his penis. Kroupa testified that A.L. informed her that on one occasion, Kenyon's private part went inside her about a half-inch or an inch, and that it was painful for A.L. A.L. told Kroupa that Kenyon also attempted to penetrate A.L.'s behind, but that he did not complete the act because it hurt her. Upon conducting a physical examination, Kroupa did not detect any injuries to A.L.

The government also introduced the testimony of Dr. Rich Kaplan, the former Medical Director of the Center on Child Abuse and Neglect at the South Dakota Children's Hospital in Sioux Falls. Dr. Kaplan testified that based on his experience, it was not unusual for a child to have no physical injury after being sexually assaulted. Dr. Kaplan also explained that it is not unusual for children to delay reporting incidents of sexual abuse, and that once children do disclose such abuse, they often do so in a piecemeal fashion.

II.

Kenyon contends that the evidence at trial was insufficient to convict him of abusive sexual contact and aggravated sexual abuse. In reviewing for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and we will "overturn a conviction only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge." *United States v. Miller*, 293 F.3d 468, 470 (8th Cir. 2002) (internal quotations and citation omitted).

Kenyon first argues that no rational jury could have convicted him because A.L.'s testimony was simply incredible. He points to evidence that none of the children sharing a bedroom with A.L. saw or heard any assault by Kenyon, that witnesses reported normal behavior by A.L. during the period of alleged abuse, and that the government presented no evidence of physical injury to A.L. It is well-established, however, that credibility is the province of the jury, and the jury was free to determine what weight should be given to A.L.'s testimony in light of the evidence cited by Kenyon. *United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001); *United States v. Wright*, 119 F.3d 630, 634 (8th Cir. 1997). Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict. *Wright*, 119 F.3d at 634; *Kirkie*, 261 F.3d at 768. Assuming there could ever be a case in which a witness's testimony is so incredible that a reviewing court would set aside a verdict based only on that testimony, this is not it. The government provided plausible explanations for the evidence highlighted by the defense, including potential bias on the part of Kenyon's daughters that might account for their failure to report abuse by Kenyon, and Dr. Kaplan's testimony that it was not unusual for a victim of child abuse to display no physical injuries. *See Kirkie*, 261 F.3d at 768.

Kenyon also urges that even if A.L.'s testimony is believed, there was insufficient evidence to establish the elements of the offenses charged in the indictment. In this regard, he contends that we may not consider all of the evidence presented at trial in evaluating the sufficiency of the evidence. Kenyon argues that because Renette Kroupa's testimony was inadmissible hearsay, we should give it no weight in determining whether he is entitled to a judgment of acquittal.

After a careful study of the record, for reasons detailed below, we reject Kenyon's claims that the evidence was insufficient to support the jury's verdicts. We disagree with his contention that we may not consider Kroupa's testimony as part of this review. An appellate court should consider "the same quantum of evidence" that was presented to the trial court in determining whether a motion for judgment of

acquittal should have been granted, even if some of the evidence was inadmissible. *Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988); *United States v. Cruz*, 363 F.3d 187, 197 (2d Cir. 2004); *cf. United States v. Alexander*, 331 F.3d 116, 128 (D.C. Cir. 2003). An error in the admission of evidence may warrant a new trial without the disputed evidence, but if the evidence admitted at the first trial was sufficient to support a conviction, then the defendant is not entitled to a judgment of acquittal.

Count I alleged that Kenyon intentionally touched A.L.'s genitalia without the presence of clothing between March 28, 2000 and March 28, 2001. *See* 18 U.S.C. §§ 2241(c), 2246(2)(D). Kenyon contends that there was insufficient evidence that he touched A.L.'s genitalia with his fingers or hands. We disagree. A.L. testified that Kenyon touched her in her private part in the "area between her legs" and tried to put his finger inside her private part "in the front." This evidence is sufficient to establish the sexual act of touching another's genitalia in violation of 18 U.S.C. § 2246(2)(D). *See Lee*, 232 F.3d at 655 (holding testimony that defendant touched child "between [her] legs" both outside and inside her clothing was sufficient to establish the intentional touching of genitalia).

With regard to Counts II and III, Kenyon asserts that the government failed to establish that Kenyon's penis penetrated A.L.'s vulva or anus. These counts charged Kenyon with aggravated sexual abuse with children, which occurs when a person in the territorial jurisdiction of the United States knowingly "engages in a sexual act . . . or attempts to do so" with a child under 12 years of age. 18 U.S.C. § 2241(c). The jury found that Kenyon had committed or attempted to commit sexual acts with A.L. involving "contact between his penis and her vulva" (Count II) and "contact between his penis and her anus" (Count III). *See* 18 U.S.C. § 2246(2)(A).

"Sexual act" is defined for purpose of these statutes as "contact between the penis and the vulva or the penis and the anus, and . . . contact involving the penis occurs upon penetration, however, slight." 18 U.S.C. § 2246(2)(A). Actual

penetration is not required to commit the violations charged against Kenyon, however, because the government can meet its burden under § 2241 if it proves a sexual act or an attempted sexual act. 18 U.S.C. § 2241(c); *United States v. Nazarenus*, 983 F.2d 1480, 1485-86 (8th Cir. 1993). The jury's verdict in this case did not specify whether it found that Kenyon engaged in a sexual act or merely an attempt. Kenyon argues that there was insufficient evidence to prove penetration on either count, and the jury may have convicted him of engaging in a sexual act without sufficient proof.

We think there was sufficient evidence for a jury reasonably to infer that Kenyon committed a vaginal sexual act. A.L. testified that Kenyon had lowered her pants and moved up and down on top of her. She further stated that his private part, which she described as being between his legs, "almost" went inside her. Kroupa's testimony provided more specific evidence of actual penetration. She testified that A.L. said Kenyon's private part went inside her "front part" about a half-inch or an inch. This was sufficient evidence to sustain a conviction under Count II based on either an attempted assault or an actual assault.

To establish the allegation of an anal sexual act under Count III, A.L. testified that Kenyon tried to "touch" her "behind" with his private part. Kroupa testified that A.L. told her that Kenyon "tried to get it in the behind but he couldn't because it hurt." Relying on *United States v. Plenty Arrows*, 946 F.2d 62, 65 (8th Cir. 1991), Kenyon contends that the references to "behind" are not sufficient to establish that the anus was the body part touched or penetrated by Kenyon. In *Plenty Arrows*, however, the victim merely testified that the defendant "touched him 'from my back of my behind,'" and we found the testimony too vague to support a conviction based on penetration between the penis and anus. *Id.* Here, by contrast, Kroupa reported that A.L. said Kenyon "tried to put it in her behind," and "tried to get it in the behind but he couldn't because it hurt." (Trial Tr. 82).

Because this testimony was sufficient to support an inference that the witness referred to a body cavity "in" A.L.'s behind, we believe it was sufficient to support the conclusion that Kenyon made contact with A.L.'s anus rather than some other part of her "behind." The statute provides that a violation occurs upon penetration, "however[] slight," 18 U.S.C. § 2246(2)(A), and there was testimony that Kenyon caused pain by attempting to penetrate A.L.'s behind. In any event, at a minimum, there was sufficient evidence to support the conviction on Count III based on an attempt to engage in a sexual act. *See United States v. Dreamer,* 88 F.3d 655, 658 (8th Cir. 1996) ("When the district court submits to the jury two or more grounds for conviction, for one of which there was insufficient evidence, and it is impossible to tell on what grounds the jury decided the defendant's guilt, we cannot reverse the jury's general verdict of guilty.").

Finally, Kenyon argues that the government failed to prove that he committed abusive sexual contact, as charged in Count IV and Count V, within the time frames charged in the indictment. Specifically, the indictment alleged that Kenyon caused and attempted to cause A.L. to engage in "intentional touching of her genitalia, anus, groin, breast, inner thigh, and buttocks" "on or about" between March 28 and April 3, 2003, in Count IV and "on or about" between April 4 and April 6, 2003, in Count V. *See* 18 U.S.C. §§ 2244(a)(1), 2241(c), 2246(3). "The law is clear that the use of 'on or about' in an indictment relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified." *United States v. Duke*, 940 F.2d 1113, 1120 (8th Cir. 1991). And even if the proof at trial does not show that the crime occurred within a reasonable time of the date specified in the indictment,

> [a] variance between the date in the pleading and the proof is not fatal if the proof shows that the acts charged were committed within the period of the statute of limitations and prior to the date of the [indictment], as long as the date is not a material element of the offense, and the defendant is not prejudiced.

*Id*. (internal quotation omitted).

Kenyon again relies on our decision in *Plenty Arrows*, where in reversing a conviction for insufficient evidence, we said that "[a] verdict cannot be based on an act that could have occurred after the return of the indictment, and the jury had no basis for inferring that the act occurred before that date." 946 F.2d at 65. Kenyon contends that here, as in *Plenty Arrows*, the testimony of the victim provided "no limitation as to the period of time when [the acts] occurred," *id.*, and that the acts could have occurred at any time up until the trial, because Kenyon had access to A.L. after the return of the indictment.

We believe there was sufficient evidence for a reasonable jury to find an incident of abusive sexual contact within a reasonable time of each charged period, and on a date prior to the return of the indictment. A.L. testified that Kenyon touched her between her legs every time she stayed at his house during the last three years. She further stated that the "last time it happened" was a week before her interview with Kroupa on April 9, 2003. Although the prosecutor did not ask A.L. to define "it," and there is thus some ambiguity concerning the sexual act to which A.L. was referring in her testimony, we believe that Kroupa's testimony provides sufficient clarity to sustain the verdicts. Kroupa testified that according to A.L., in the one and one-half months before her interview on April 9, 2003, Kenyon had done "the touching things" on two more occasions, and that the last touching incident had been one or two weekends before April 9. Viewing that testimony in the context of Kroupa's entire testimony about her interview with A.L., a jury reasonably could infer that Kroupa's reference to "the touching things" meant "sexual contact" within the scope of 18 U.S.C. § 2246(3). The evidence of two touching incidents in one and one-half months preceding April 9, 2003, provided sufficient evidence to support convictions on Counts IV and V of the indictment.

III.

Kenyon asserts that the district court erred when it excluded evidence that Dale Middletent, one of A.L.'s caretakers, "was attracted to girls around [A.L.'s] age and

had sexually molested his own two step daughters when they were [A.L.'s] age," and that A.L. "had been sexually active with a local boy." (Appellant's Br. at 32, 36). Kenyon claims that this evidence was offered to rebut the government's argument that Kenyon was the source of A.L.'s unusual knowledge of the male anatomy and how it functions.

The district court found that this evidence was inadmissible under Federal Rule of Evidence 412, which generally excludes evidence of a victim's past sexual conduct, and that it should be excluded as a waste of time under Rule 403. We review the district court's evidentiary rulings for abuse of discretion, and we find none here. Middletent's alleged sexual contact with his stepdaughters occurred almost twenty years earlier, and it did not involve sexual penetration. Kenyon presented no evidence that Middletent had sexual contact with A.L. For Kenyon's theory to be persuasive, the jury would have been required to assume that Middletent did have sexual contact with A.L., and that he committed acts different and more serious than he was alleged to have committed with his own stepdaughters twenty years earlier. The theory was entirely speculative, and the district court did not abuse its discretion in excluding the evidence concerning Middletent.

The evidence concerning A.L.'s alleged sexual activity with a local boy also was properly excluded. Kenyon's offer of proof was based on hearsay from a third party, and it involved only an allegation that the boy had kissed A.L. and touched her in a private area. Even if true, this evidence of previous sexual behavior was inadmissible under Rule 412, unless exclusion would violate Kenyon's constitutional rights. Fed. R. Evid. 412(b)(1)(C). We see no basis to find such a constitutional violation. The evidence would not have supported Kenyon's theory that A.L. had an alternative source of knowledge concerning such things as male erections and semen, and the district court properly declined to receive it.

IV.

Kenyon also contends that the district court abused its discretion in admitting the testimony of Renette Kroupa, concerning prior statements by A.L., as substantive evidence under Federal Rule of Evidence 801(d)(1)(B). Rule 801(d)(1)(B) provides that an out-of-court statement by a witness is not hearsay if it is a prior consistent statement offered to rebut a charge of recent fabrication. We review the district court's evidentiary ruling for abuse of discretion, but we will reverse "when an improper evidentiary ruling affects the substantial rights of the defendant." *Kirkie*, 261 F.3d at 767 (internal quotation omitted).

The Supreme Court has explained that "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome v. United States*, 513 U.S. 150, 157 (1995). Rule 801(d)(1)(B) permits admission of prior consistent statements as non-hearsay "only when those statements were made before the charged recent fabrication or improper influence or motive." *Id.* at 167. Following *Tome*, our court reversed a conviction for aggravated sexual abuse in *United States v. Beaulieu*, 194 F.3d 918, 920, 922 (8th Cir. 1999), where the district court admitted prior consistent statements of the victim as evidence of her credibility. We observed that the defense asserted that the victim had "made up [her] story from the start," and concluded that the victim's out-of-court statements were not made before the alleged fabrication, as required by *Tome*. *Id.* at 920.

In this case, the government contends that Kenyon asserted that A.L. fabricated her testimony for the first time at trial, and that it was thus proper to admit Kroupa's testimony to rebut a charge of recent fabrication. In particular, the government points to the following excerpts from A.L.'s cross-examination as charges of recent fabrication:

-11-

Q: And you say that he did things to you during the daytime?

A: Yes.

Q: You never told Renette Kroupa that, did you?

A: No.

Q: You just made that up today, didn't you?

A: No.

*     *     *

Q: Now, you were asked about -- or, you testified today that Ron put his private part into your mouth?

A: Yes.

Q: And you agree you never told anybody that before?

A: Yes.

Q: Today is the first day you've ever mentioned that?

A: Yes.

. . .

Q: Okay. But you're saying you were too scared to tell Renette that Ron stuck his private part in your mouth?

A: I can't answer that question (sobbing).

Q: Why can't you?  Is it because Ron never put his private part in your mouth?

(Tr. at 50-51, 61-62).

These questions and answers do not provide a basis to admit Kroupa's testimony as substantive evidence.  The quoted passages illustrate that defense counsel was able to impeach A.L.'s testimony on two matters by showing that she had not disclosed certain alleged sexual abuse to Kroupa.  As to those matters, Kenyon did implicitly charge that A.L. fabricated the testimony on the day of trial.  But Kroupa's testimony did not rebut that implied charge of recent fabrication, because Kroupa did not present evidence of a prior consistent statement with respect to the matters on which A.L. was impeached.  The whole point of the impeachment was that A.L. did not describe daytime abuse and attempted oral sex to Kroupa.

With respect to the events that A.L. did recount to Kroupa, the defense presented no evidence to imply that A.L. fabricated those charges after the Kroupa interview.  There was no evidence, for example, that A.L. omitted mention of certain allegations during an intervening grand jury appearance.  If the defense had impeached A.L. with that sort of intervening inconsistent statement, then A.L.'s prior consistent statement to Kroupa would be admissible under Rule 801(d)(1)(B) to rebut the implied charge that A.L. fabricated the testimony between her grand jury appearance and the trial.  As it happened, however, the defense mounted a general attack on A.L.'s credibility, including allegations of bias against Kenyon, with no evidence to imply that A.L. had recently fabricated the matters previously recounted to Kroupa.

The government argues alternatively that Kroupa's testimony was admissible to rehabilitate A.L.'s credibility after she was impeached with the fact that she

omitted certain allegations in her interview with Kroupa. *See United States v. Harris*, 761 F.2d 394, 399-400 (7th Cir. 1985). Under this view, Kroupa's reporting of A.L.'s prior statements is "relevant to whether the impeaching statements really were inconsistent within the context of the interview, and if so, to what extent." *Id*. at 400. If offered only for purposes of rehabilitation, the government contends, the prior consistent statements are not inadmissible hearsay, because they are not offered for the truth of the matters asserted. Our court has recognized, moreover, that "rehabilitative use of prior consistent statements is in accord with the principle of completeness promoted by Rule 106." *United States v. Andrade*, 788 F.2d 521, 533 (8th Cir. 1986).

We agree that, in appropriate circumstances, prior consistent statements may be admitted for rehabilitative purposes, even where they do not meet the restrictions of Rule 801(d)(1)(B). Prior statements may clarify or amplify the meaning of an impeaching inconsistent statement, and they may "bear on whether, looking at the whole picture, there was any real inconsistency" between the witness's prior statement and the testimony at trial. *United States v. Rubin*, 609 F.2d 51, 70 (2d Cir. 1979) (Friendly, J., concurring), *aff'd on other grounds*, 449 U.S. 424 (1981). The extent to which such rehabilitative evidence may be received is generally left to the sound discretion of the trial court. *Andrade*, 788 F.2d at 533.

The difficulty with the government's theory of rehabilitative use in this case is that Kroupa's testimony was neither offered nor admitted on that basis, and the jury was never instructed that the evidence was received for a limited purpose. *Cf. United States v. Ellis*, 121 F.3d 908, 920 & n.17 (4th Cir. 1997) ("Here, the district court properly told the jury to use the prior consistent statements only to assist in determining the credibility of the witness."). The district court admitted Kroupa's testimony as non-hearsay under Rule 801(d)(1)(B), and the government relied on it as proof that Kenyon committed the charged offenses. Indeed, Kroupa's testimony expanded on A.L.'s trial testimony in potentially significant ways, such as by describing a specific degree of sexual penetration during one incident, and by

providing detail about the dates of alleged touching incidents. Under the circumstances, we do not believe the government's belated reliance on a limited rehabilitative use of the prior statements is a sound basis on which to uphold the admission of Kroupa's testimony.

We thus conclude that the district court abused its discretion in admitting Kroupa's testimony concerning A.L.'s prior statements as substantive evidence under Rule 801(d)(1)(B). The government does not argue that the evidentiary ruling could be a harmless nonconstitutional error, on the ground that the admission of Kroupa's testimony did not substantially influence the jury's verdict or leave "grave doubt" as to whether it had such an effect. *See* Fed. R. Crim. P. 52(a); *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). We have discretion to overlook the government's waiver and conduct harmless error analysis, but we err on the side of the defendant when doing so. *Lufkins v. Leapley*, 965 F.2d 1477, 1481 (8th Cir. 1992); *United States v. Montgomery*, 100 F.3d 1404, 1407 (8th Cir. 1997).

In this case, A.L.'s testimony was the sole basis for conviction, and it was uncorroborated by physical evidence or witnesses to the alleged abuse. Kenyon presented testimony from witnesses that, if believed, could be viewed as contradicting A.L.'s testimony. Kroupa's testimony had the potential to bolster A.L.'s credibility through an articulate description of the alleged abuse, and to augment A.L.'s testimony with additional detail in certain areas. *Cf. United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995) (holding, on remand from Supreme Court, that admission of hearsay was not harmless error where "the victim's own testimony at trial was not nearly as articulate or comprehensive in its description of the abuse"). This is not to say that A.L.'s testimony was insufficient on every count to support a conviction, but sufficiency of the evidence and harmlessness of an error are different questions. *See United States v. Hazelett*, 80 F.3d 280, 283 (8th Cir. 1996). Giving the benefit of the doubt to the defendant in accord with our precedents, we conclude that the erroneous admission of Kroupa's testimony as substantive evidence affected Kenyon's substantial rights.

-15-

\*       \*       \*

For the foregoing reasons, we reverse the judgment of conviction and remand for further proceedings not inconsistent with this opinion. Kenyon's motion for leave to file a supplemental brief on sentencing issues is denied as moot.

_____