# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1657
_____

United States of America

*Plaintiff - Appellee*

v.

Patrick Brown Thunder

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre
_____

Submitted: January 14, 2014
Filed: March 12, 2014
_____

Before GRUENDER, BRIGHT, and MELLOY, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Following a jury trial, Patrick Brown Thunder was convicted of two counts of a four-count indictment: sexual abuse of a minor (A.C.), a violation of 18 U.S.C. §§ 2243(a) and 1153(a), and sexual abuse of a person incapable of consenting (H.C.),

a violation of 18 U.S.C. §§ 2242(2) and 1153(a). The district court[1] sentenced him to concurrent 180- and 240-month terms of imprisonment. For the reasons described below, we affirm.

## I. Background

On March 28, 2008, three minor girls, A.C., H.C., and T.C., consumed a liter of whiskey at A.C.'s home. Brown Thunder, who was 26 years old at the time, joined the girls. Shortly before A.C.'s mother was due to arrive at the residence, Brown Thunder drove away with H.C. By this time, the alcohol had caused H.C. to experience difficulty walking and speaking. Shortly thereafter, H.C.'s mother, Fawn High Bear, realized her daughter was not at home and called A.C.'s house. She spoke with T.C., who said that H.C. "went off walking alone." T.C. told A.C. about her conversation with High Bear. A.C. then visited High Bear and told her the truth—that Brown Thunder had driven away with her daughter.

High Bear drove to the house of Brown Thunder's mother, where she identified Brown Thunder in his car. She parked behind his vehicle and yelled out, "My daughter—I want my daughter out of there." Looking in the vehicle's window, she identified her daughter passed out on the reclined front passenger seat. She pounded on the window and pulled the locked door handle—all to no avail. Boxed in by High Bear's car behind him, Brown Thunder sped off through the backyard and escaped with H.C. High Bear notified the authorities.

Several hours later, H.C. knocked on Kelly Speker's front door, and his girlfriend, Alyssa Knight, answered. Knight called H.C.'s aunt, Jennifer Brown Wolf,

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

to report H.C.'s appearance at Speker's residence. Knight waited outside with H.C. until Brown Wolf arrived. H.C. was unable to remember what had happened to her. When Brown Wolf arrived, she observed that H.C.'s hair was disheveled, her makeup was smeared, and her shirt and pants were stained with blood. H.C. also was missing a shoe. After meeting with High Bear, they called an ambulance to take H.C. to the local hospital. Unable to receive care there, High Bear drove H.C. to the hospital in Pierre, South Dakota.

The attending nurse identified scrapes on H.C.'s face and chest, bruises on her knees, and a two-centimeter laceration on the right side of her vaginal wall. According to the physician who testified at trial, this laceration was consistent with an object being inserted into the vagina and not with a straddle-type injury. Blood was identified on her shirt, pants, and underwear. No evidence of semen was found on H.C.'s genitals or clothing, but a blood sample retrieved from Brown Thunder's front passenger seat matched H.C.'s DNA. Medical experts testifying at trial agreed that it was not possible to determine whether the injury was caused by a penis, a hand, a finger, or another object.

During the investigation of H.C.'s assault, A.C. told an FBI agent that Brown Thunder first had intercourse with her when she was thirteen years old. The FBI agent visited a trailer court parking lot where A.C. reported she and Brown Thunder had sex. The agent found H.C.'s missing shoe in the parking lot.

At trial, Brown Thunder attempted to implicate Speker, a convicted sex offender, as the perpetrator responsible for assaulting H.C. However, given the lack of evidence showing Speker and H.C. spent time alone together on the evening in question, the district court did not allow Brown Thunder to introduce evidence of Speker's prior sexual abuse conviction. Instead, the court limited the inquiry about

Speker to whether law enforcement conducted a sufficient investigation of H.C.'s assault.

Following the jury's guilty verdict, Brown Thunder filed a motion for judgment of acquittal based upon insufficiency of the evidence as to the sexual abuse count involving H.C., which was denied. Brown Thunder raises three arguments on appeal: (1) the district court abused its discretion by failing to give his theory-of-defense instruction; (2) the evidence was insufficient to support his conviction for sexually abusing H.C.; and (3) the district court abused its discretion by excluding evidence of Speker's prior sexual abuse conviction.

## II. Discussion

### A. Theory-of-Defense Instruction

"We review a district court's rejection of [a] defendant's proposed instruction for abuse of discretion, and we recognize that district courts are entitled to broad discretion in formulating the jury instructions." *United States v. Ironi*, 525 F.3d 683, 688 (8th Cir. 2008) (quoting *United States v. Hayes*, 518 F.3d 989, 994 (8th Cir. 2008)). "We will affirm so long as the jury instructions given by the district court, 'taken as a whole, fairly and adequately submitted the issues to the jury.'" *United States v. Chatmon*, --- F.3d ---, 2014 WL 443979, at *3, slip op. at 6 (8th Cir. Feb. 5, 2014) (quoting *United States v. Engelmann*, 720 F.3d 1005, 1011 (8th Cir. 2013)). "Defendants are entitled to a theory of defense instruction if it is timely requested, is supported by the evidence, and is a correct statement of the law." *Id.* However, "there is no error if the instructions as a whole, by adequately setting forth the law, afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it." *United States v. Christy*, 647 F.3d 768, 770 (8th Cir. 2011).

Brown Thunder submitted a handwritten proposed jury instruction outlining three defense theories: (1) that A.C. falsely accused Brown Thunder; (2) that the evidence was insufficient to prove that H.C. was sexually abused or, in the alternative, that Brown Thunder was the perpetrator of any abuse; and (3) that High Bear falsely testified that she identified her daughter in Brown Thunder's car. The district court rejected the instruction, reasoning that it was "duplicative of what already [was] in the instructions" and was "more in the nature of arguments to the jury." However, the district court did instruct the jury that Brown Thunder had pled not guilty and was presumed to be innocent until proven guilty. The district court also explained that, to establish guilt, the essential elements of each offense had to be proven by the Government beyond a reasonable doubt. The jury also was instructed to consider the credibility of the witnesses in reaching its verdict.

In *Christy*, the defendant requested an alibi theory-of-defense instruction, which the district court rejected. *Id.* at 770-71. We observed that "[n]o specific instruction was necessary to alert the jur[ors] that . . . [they] must find [the defendant] not guilty if they had a reasonable doubt about whether he was present" at the scene of the crime. *Id.* at 771. Likewise, no additional specific instruction was necessary here. Based on the instructions given, the jurors understood that they had to find beyond a reasonable doubt that Brown Thunder sexually abused H.C. The jurors also knew they had to consider whether the testimony against him was credible and truthful. Brown Thunder's rejected theory-of-defense instruction essentially amounted to an assertion that he did not commit the crimes charged. He was afforded the opportunity to argue these theories during closing argument; moreover, the jury instructions, as given, reasonably ensured that the jury would consider his theories. *See United States v. Fregoso*, 60 F.3d 1314, 1328 (8th Cir. 1995) (finding no error where the substance of the rejected instruction was adequately addressed in other instructions and the defendant's counsel was permitted to argue the substance of the rejected instruction during closing argument). Accordingly, we find no abuse of

-5-

discretion in refusing to give Brown Thunder's tendered theory-of-defense instruction.

## B. Sufficiency of the Evidence

"In reviewing the denial of a motion for a judgment of acquittal, we review the sufficiency of the evidence *de novo*, evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." *United States v. Wright*, 739 F.3d 1160, 1167 (8th Cir. 2014). "[T]he court will not disturb the conviction unless 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). "Importantly, '[i]t is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence. It is enough if the entire body of evidence [is] sufficient to convince the fact-finder beyond a reasonable doubt of the defendant's guilt.'" *Id.* (first alteration in original) (quoting *United States v. Surratt*, 172 F.3d 559, 564 (8th Cir. 1999)). This is a "very strict standard of review." *United States v. Cook*, 356 F.3d 913, 917 (8th Cir. 2004). Brown Thunder raises two sufficiency arguments with respect to the sexual abuse count involving H.C., and we consider them each in turn.

Brown Thunder was found guilty of sexual abuse of a person incapable of consenting, requiring proof that he "engage[d] in a sexual act with another person" who was "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." *United States v. Demery*, 674 F.3d 776, 779 (8th Cir. 2011) (quoting 18 U.S.C. § 2242(2)). Section 2246(2) describes four different types of conduct constituting a "sexual act." 18 U.S.C. § 2246(2). Brown Thunder was found guilty of sexual abuse by means of the sexual act described in § 2246(2)(C), requiring "penetration, however slight, of the anal or genital opening of another by a hand or

finger or by any object." *Id.* Brown Thunder also was charged in a separate count of sexually abusing H.C. by means of the sexual act described in § 2246(2)(A), requiring "contact between the penis and the vulva or the penis and the anus." *Id.* He was acquitted on this count.

Brown Thunder contends that no reasonable jury could have found him guilty of abusing H.C. by use of his hand, finger, or any object, as opposed to his penis.[2] In support of his argument, Brown Thunder cites undisputed medical expert testimony that it was not possible to determine whether H.C. was abused with Brown Thunder's penis or with his hand, finger, or any object. Brown Thunder asserts that "[i]f there was a reasonable possibility that the contact was with a penis, then there was a reasonable possibility that the contact was *not* with the defendant's hand, finger[,] or [any] object." Appellant's Brief at 23 (emphasis in original). As uncomfortable as it is to characterize his claim as a "hypothesis of innocence," Brown Thunder essentially argues that he cannot be held accountable for H.C.'s sexual abuse because there is a "reasonable possibility" that he sexually abused her with his penis and not with his hand, finger, or any object. This argument, however, misconstrues our role in reviewing a jury's verdict. We have held that "[i]t is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence." *Wright*, 739 F.3d at 1167. Rather, "[i]t is enough if the entire body of evidence [is] sufficient to convince the fact-finder beyond a reasonable doubt of the defendant's guilt." *Id.*

We conclude that the body of evidence was sufficient to support the jury's finding that Brown Thunder used his hand, finger, or any object in perpetrating sexual

---

[2]The Government did not argue that a penis might qualify as an "object" for purposes of § 2246(2)(C). Because this matter of statutory interpretation has not been briefed and because the case can be resolved under sufficiency-of-the-evidence review, we assume without holding that a penis is not an "object" within the meaning of § 2246(2)(C).

abuse against H.C. Brown Thunder left A.C.'s house with H.C., and High Bear later identified her unconscious daughter with Brown Thunder in his car. He refused High Bear's demand to release her daughter, and he sped away. This evidence indicates that Brown Thunder was alone with H.C. and had the opportunity to sexually abuse her. One of H.C.'s shoes went missing during the evening of the attack; that shoe was found in a parking lot where Brown Thunder previously had sexually abused another victim, providing yet another link to Brown Thunder. The attending physician identified several injuries indicating that H.C. suffered a sexual assault, including scraping on her face and chest, bruising on her knees, and a two-centimeter vaginal laceration. Her blood was detected on her shirt, pants, and underwear, as well as on Brown Thunder's front passenger car seat, supporting the conclusion that she was in his car during or after the attack. Finally, no semen was detected on her clothing or genitals. While it is possible for penile penetration to occur without ejaculation, the absence of semen supports a reasonable inference that a hand, finger, or any object was used during the assault. While it might be that Brown Thunder employed his penis to sexually abuse H.C., this theory alone is insufficient to overturn the jury's verdict under this "very strict standard of review." *Cook*, 356 F.3d at 917. "[E]valuating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor," *Wright*, 739 F.3d at 1167, we conclude that a reasonable jury could have concluded that Brown Thunder sexually abused H.C. by use of his hand or finger or by any object.

Brown Thunder also contends that the evidence was insufficient to prove that H.C.'s sexual assault occurred in Indian country, as required by 18 U.S.C. § 1153(a). This argument is unavailing. Brown Thunder admitted at trial that he never left the Cheyenne River Sioux Indian Reservation on the evening of March 28 or the morning of March 29, 2008. Additionally, H.C.'s missing shoe was found at the same trailer court parking lot where Brown Thunder had previously sexually assaulted A.C. This parking lot is within the boundaries of the reservation. His admission, together with

the location of H.C.'s missing shoe, would allow a reasonable jury to conclude that H.C.'s assault occurred in Indian country.

Accordingly, we affirm the denial of Brown Thunder's motion for judgment of acquittal.

## C. Speker Evidence

"We review a district court's decision to admit or exclude testimony for an abuse of discretion." *United States v. Jewell*, 614 F.3d 911, 918 (8th Cir. 2010). The Federal Rules of Evidence permit a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues." Fed. R. Evid. 403. Brown Thunder sought to introduce evidence of Speker's prior sexual abuse conviction in order to suggest that it was Speker, and not Brown Thunder, who sexually abused H.C. However, citing Rule 403 and a concern over confusion of the jury, the district court excluded evidence of Speker's prior sexual abuse conviction given the complete lack of evidence showing that Speker was alone with H.C. The district court instructed the jury that any testimony concerning Speker was being admitted for the limited purpose of evaluating the sufficiency of the law enforcement investigation.

Brown Thunder contends this ruling and the court's limiting instruction deprived him of his right to present a defense and his right to a fair trial. We disagree. In *United States v. Kenyon*, 397 F.3d 1071 (8th Cir. 2005), Kenyon sought to introduce evidence that his victim's caretaker had a past sexual abuse conviction and argue that the caretaker, rather than Kenyon, committed the crime. *Id.* at 1079. The district court excluded the evidence, and we affirmed because Kenyon's caretaker theory was unsupported by any evidence and "was entirely speculative." *Id.* Similarly, Brown Thunder's theory that Speker perpetrated the abuse is based solely

upon conjecture. The record is devoid of evidence that Speker spent any time alone with H.C. While H.C. did approach his residence on the evening in question, Knight waited with H.C. until Brown Wolf retrieved her. H.C. testified that she did not interact with anyone other than Knight while waiting for Brown Wolf to arrive at Speker's residence. The lack of evidence that Speker had the opportunity to abuse H.C. completely undermines the probative value of his prior conviction. Moreover, admitting the conviction into evidence very likely would have confused the jury by creating the impression that someone without access to the victim may have committed the crime. This leads us to conclude that the district court did not abuse its discretion by excluding Speker's prior conviction under Rule 403 and giving the limiting instruction.[3]

Accordingly, the district court did not abuse its discretion in excluding evidence of Speker's prior sexual abuse conviction, and we affirm.

**III. Conclusion**

For the foregoing reasons, we affirm.

_____

_____

[3]Additionally, Rule 412 also would bar the admission of this evidence. When a party seeks to offer evidence that "someone other than the defendant was the source of semen, injury, or other physical evidence," the party is required to file a motion describing the proposed evidence at least fourteen days before trial and to notify the victim of the proposed evidence. Fed. R. Evid. 412(c)(1). Here, Brown Thunder neglected to file a Rule 412 motion and failed to notify H.C. or her guardian or representative of the proposed Speker evidence. *See United States v. Eagle*, 137 F.3d 1011, 1015 (8th Cir. 1998) (holding that the district court did not abuse its discretion in excluding evidence based upon the defendant's non-compliance with the deadlines in Rule 412(c)).