**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lynn Duane RAYL, Defendant–
Appellant.**

**No. 01–1338.**

United States Court of Appeals,
Eighth Circuit.

Submitted: June 12, 2001.

Filed: Oct. 29, 2001.

*ris,* 236 F.3d 582, 586–88 (10th Cir.2000); *United States v. Baldwin,* 186 F.3d 99, 101 (2d

Cir.1999) (per curiam).

Ann M. Koszuth, Springfield, MO, argued, for defendant–appellant.

Randall D. Eggert, Asst. U.S. Atty., Springfield, MO, argued (David C. Jones, Asst. U.S. Atty., on the brief), for plaintiff–appellee.

Before: LOKEN and HALL,* Circuit Judges, and ROSENBAUM,** District Judge.

* The HONORABLE CYNTHIA HOLCOMB HALL, United States Circuit Judge for the Ninth Circuit, sitting by designation.

LOKEN, Circuit Judge.

After the FBI investigated a complaint by fifteen-year-old D.R. that Lynn Duane Rayl had lured her to a motel room and forced her to pose for sexually explicit photographs, Rayl was convicted of four federal child pornography offenses. The district court[1] sentenced him to 405 months in prison on Count 1, and to lesser concurrent sentences on the other three counts. Rayl appeals, challenging the sufficiency of the evidence on each count. Having reviewed the trial evidence in the light most favorable to the verdict, *see United States v. Jenkins*, 78 F.3d 1283, 1287 (8th Cir.1996) (standard of review), we affirm.

At trial, D.R. testified that Rayl initiated an e-mail "pen pal" relationship in November 1999, posing as fifteen-year-old Topanga, whom he described as one of nine adopted daughters living with a father who was teaching them to have sex the right way. After many on-line and e-mail conversations between Topanga and D.R., Rayl began corresponding directly with D.R. on-line, encouraging her to run away with him and have sex. When communicating directly, Rayl used the Internet name "Ninero," a Spanish word meaning fond of children.

Topanga and D.R. arranged to meet for the first time at a shopping mall on January 21, 2000. When D.R. arrived, Rayl met her and said that Topanga was ill and could not join them. Though frightened of Rayl, D.R. was afraid to call her family for a ride home because she had lied about where she was going, so she accepted Rayl's offer of a ride home. Instead, Rayl took her to a motel room, where he displayed an open pocket knife and told her to undress. Rayl also undressed and took six close-up photographs of D.R. with her hands on her hips and her genitals exposed. He also showed D.R. nude pictures of other young girls, who he said were his adopted daughters, and he touched D.R.'s breasts and vagina. Later, Rayl ordered a pizza and watched a movie. He offered D.R. purple panties and a lingerie item, which she refused. Eventually, after D.R. refused to have sex with him, Rayl drove her home. D.R. did not tell her mother or her grandparents about the incident, but when Rayl continued to send her increasingly hostile e-mail messages demanding that she run away with him, a terrified D.R. finally told her grandfather. He contacted the FBI, and this investigation ensued.

D.R.'s testimony was partially corroborated by the motel desk clerk and the pizza delivery person. The government introduced e-mails from D.R. to "Ninero" recovered from Rayl's computers, and records from D.R.'s Internet service provider revealed over one hundred e-mail messages transmitted between D.R. and "Ninero" in January alone. More significantly, in our view, a warrant search of Rayl's home and computers uncovered, and the government introduced at trial, many tangible items that D.R. had described from her encounter in the motel room—the knife, a black doctor's bag, two Polaroid and digital cameras of the kind Rayl used to take the pictures, the clothes D.R. said Rayl was wearing, and D.R.'s

---

** The HONORABLE JAMES M. ROSENBAUM, Chief Judge of the United States District Court for the District of Minnesota, sitting by designation.

1. The HONORABLE DEAN WHIPPLE, Chief Judge of the United States District Court for the Western District of Missouri.

diary, which she discovered was missing after the encounter. The government also introduced numerous images of nude children discovered during the search of Rayl's home and computers. D.R. testified that government Exhibits 11 and 11.1 were among the pictures of nude young girls Rayl showed her in the motel room. Rayl told D.R. these were pictures of Topanga. The poses were sexually provocative.

On appeal, Rayl argues that the government's evidence was insufficient as to all four counts of conviction. We will discuss each count separately. Counts 1 and 2 were based upon Rayl's conduct with D.R. in the motel room, whereas Counts 3 and 4 were based upon the materials found in the subsequent warrant search of his home and computers.

■ *In Count 1,* Rayl was charged with enticing a minor to engage in sexually explicit conduct to produce a visual depiction using materials transported in interstate commerce, a violation of 18 U.S.C. § 2251(a). Because the government failed to introduce any nude photographs of D.R., Count 1 turned on D.R.'s testimony that Rayl enticed or coerced her into the motel room, where he took sexually explicit photos of her, and that she saw the photographs taken with the Polaroid camera before she left the motel.

■ Rayl argues that D.R.'s testimony lacked credibility because she admitted she lied to her grandparents before going to the mall, she did not take advantage of possible opportunities to escape before Rayl locked her in the motel room, and her trial testimony embellished Rayl's brandishing of the pocket knife when compared to her prior statement to the FBI. This issue of witness credibility is virtually unreviewable on appeal because it is "preeminently the job of the finder of fact." *United States v. E.R.B.,* 86 F.3d 129, 130 (8th

Cir.1996). The jury obviously believed D.R. Our review of her testimony and that of the other witnesses gives us no reason to second-guess that credibility determination. Thus, the evidence was sufficient to support Rayl's conviction on Count 1.

■ *In Count 2,* Rayl was charged with use of interstate facilities to entice a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). Under Missouri law, forced sexual contact and photographing nude minors for sexual stimulation are criminal offenses. *See* Mo. Ann.Stat. §§ 566.100, 568.060.1(2), 2. D.R. testified that Rayl used e-mail messages to entice her to meet him on January 21, and he then forced her to have sexual contact and to pose for suggestive nude photographs. Rayl again argues the evidence was insufficient because D.R.'s testimony was not credible. We decline to second-guess the jury's decision to credit D.R.'s testimony. That testimony was sufficient to establish a violation of 18 U.S.C. § 2422(b).

*In Count 3,* Rayl was charged with knowing interstate transportation of child pornography by means of a computer in violation of 18 U.S.C. § 2252A(a)(1). This charge was based on outgoing e-mails containing pictures of nude children discovered during the warrant search of Rayl's computers.

■ Rayl first argues the government failed to prove that the allegedly pornographic e-mail messages were ever sent. Government agents testified that they found the allegedly pornographic digital pictures attached to some of the numerous incoming and outgoing messages that were stored in the "draft" folder of the e-mail program on Rayl's computer. A defense expert testified that the draft folder is normally a default for e-mails created but

not sent, and that it was impossible to determine whether the messages in Rayl's draft folder had in fact been sent. Government witnesses, on the other hand, testified that Rayl would not have created drafts of incoming e-mails, and theorized that Rayl had moved both sent and received messages to the draft folder after sending or receiving them. In closing argument, the prosecutor invited the jury to vote not guilty on Count 3 if they doubted that Rayl had sent the messages found in his draft folder. Instead, the jury credited the government's witnesses, a credibility determination we decline to overturn on appeal.

■ Rayl next argues that the district court erred in admitting the testimony of an experienced pediatrician who opined that many of the children depicted in the materials found in Rayl's home and computers were under the age of eighteen. We disagree. The district court did not abuse its discretion in permitting this well-qualified physician to testify as an expert as to the ages of children in the photographs, magazine, and video found in Rayl's possession. *Compare United States v. Broyles*, 37 F.3d 1314, 1317–18 (8th Cir. 1994). Many of the materials contained images of prepubescent children, and the jury was free to make its own conclusion as to the age of the children depicted. The evidence was clearly sufficient to convict Rayl on Count 3.

■ *In Count 4*, Rayl was charged with knowing possession of materials that contain child pornography and were transported in interstate commerce by any means, including computers, a violation of 18 U.S.C. § 2252A(a)(5)(B). Child pornography includes a visual depiction of a child engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8). Rayl argues the government failed to prove that materials in his possession depicted children engaged in sexually explicit conduct. As relevant to this case, "sexually explicit conduct" means "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(E). A depiction of a child is a lascivious exhibition of the genitals when "the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer." *United States v. Horn*, 187 F.3d 781, 789 (8th Cir.1999), *cert. denied*, 529 U.S. 1029, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000). Rayl contends the materials "were simply frontal views of nude individuals."

■ At trial, in response to a defense relevancy objection, the government argued—without contradiction—that the issue of lasciviousness was for the jury. The district court then admitted allegedly pornographic exhibits without a preliminary review of whether they depicted sexually explicit conduct as a matter of law. Of course, the question whether materials depict "lascivious exhibition of the genitals," an element of the crime, is for the finder of fact. *See United States v. O'Malley*, 854 F.2d 1085, 1087 (8th Cir.1988), a case tried to the court without a jury. However, the meaning of "lascivious exhibition of the genitals" is an issue of law. *See Horn*, 187 F.3d at 789. Because the issue raises First Amendment concerns, and because of the potential prejudice in allowing the government to introduce and submit to the jury a large volume of materials that are prurient but non-obscene along with a few materials that could properly be found to be child pornography, we think the district court should conduct a preliminary review of whether materials offered by the government for this purpose depict sexually explicit conduct as a matter of law. But in this case, even if the court's failure to conduct such a review resulted in the wrongful admission of some materials containing what might be termed mere

nudity, we cannot gauge the impact of that error because the record does not make clear what materials were submitted to the jury on Count 4, and because the record on appeal does not include all allegedly pornographic materials admitted into evidence at trial.

The government placed in the record on appeal some of the allegedly pornographic materials admitted into evidence. Based upon our review of these exhibits, there was no plain error. Exhibits 11 and 11.1 were pictures of a young girl in sexually provocative poses. The jury could reasonably find they depicted sexually explicit conduct within the meaning of 18 U.S.C. § 2256(2)(E). These exhibits were clearly relevant and admissible because D.R. testified that Rayl showed them to her as pictures of Topanga. Thus, there was sufficient evidence to support Rayl's conviction on Count 4.

Finally, Rayl argues there was insufficient evidence the pornographic materials had traveled in interstate commerce. We disagree. Exhibits 11 and 11.1 were found on Rayl's computer, and there was evidence they traveled through computer servers located outside of Missouri to get there. The government's evidence also included a French nudist magazine, a videotape produced in the Czech Republic, and numerous photographs taken by an ocean. Given the way in which Count 4 was submitted, this was ample evidence establishing the interstate commerce element of the offense.

The judgment of the district court is affirmed.