# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-3211

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Darrell Lee Miller, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 2002
Filed: June 10, 2002

_____

Before HANSEN, Chief Judge, BEAM and BYE, Circuit Judges.

_____

HANSEN, Chief Judge.

Darrell Lee Miller was convicted of abusive sexual contact with a minor less than twelve years of age in violation of 18 U.S.C. § 1153 and § 2244(a)(2) & (c), and was sentenced to 63 months imprisonment. Miller appeals the district court's[1] judgment of conviction, alleging that there was insufficient evidence to support the

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

conviction, and appeals a two-level enhancement added by the district court[2] to his sentence's base offense level for having custody, care, or supervisory control over the victim pursuant to United States Sentencing Guidelines (USSG) § 2A3.4(b)(3) (2000). We affirm Miller's conviction and his sentence.

## I.

Miller is a Native American who lived on a Nebraska Indian reservation at all times relevant to this case. Miller had a long-term "on-again, off-again" relationship with Ida Blackbird, who also lived on a Nebraska Indian reservation. Ms. Blackbird had a daughter and a son from a previous relationship and had three younger children with Miller, two daughters and a son. The children lived with Ms. Blackbird, and Miller stayed with them intermittently, usually for weeks at a time, over a period of several years. Miller was indicted in January 2001, for sexual contact with Ms. Blackbird's oldest daughter, whom we will refer to as "A.B."

A.B. first revealed the sexual contact to her school counselor in December 2000. She told her counselor that her dad (referring to Miller) touched her in inappropriate places and that the last time had occurred around Halloween. The counselor did not inquire, and A.B. did not specify, to what year she was referring. A.B. also told a social worker that the inappropriate contact had been going on since she was five or six years old, with the last incident occurring a couple of days before New Year's Day 2000, when A.B. was eleven years old.

A.B. testified that Miller first touched her inappropriately during a trip to Denver, Colorado, when she was six years old. Miller had taken A.B., her two sisters, and her two brothers to see Miller's four other children, from another relationship, in

---

[2]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

Colorado. Miller was the only adult on the trip. A.B. testified that on the way back home from Colorado, they had stopped at Miller's sister's house, and while A.B. slept in a bed with her two sisters and Miller, Miller touched her "middle," the term she used to refer to her private parts, and forced her to rub his penis. She also testified about other instances in which Miller came into her room at night and forced her to have inappropriate sexual contact with him by holding her hand so that she could not pull her hand away and threatening to beat her up if she told anyone. A.B. testified that the last time the sexual contact had occurred was a couple of days before New Year's Day 2000. Throughout her testimony, A.B. referred to Miller as "Dad." Miller's two daughters also testified that Miller had touched them inappropriately.

The jury convicted Miller of the charged account. The district court added a two-level enhancement to Miller's base offense level for having custody, care, or supervisory control over the victim, which raised Miller's sentencing range from 51-63 months to 63-72 months. The district court sentenced Miller to 63 months imprisonment. On appeal, Miller argues that there was insufficient evidence that sexual contact had occurred "on or around December 28, 1999," as stated in the Indictment and the jury instructions. He also argues that the district court erred in adding the two-level enhancement to his base offense level.

II.

Miller argues that the government failed to present sufficient evidence that the alleged sexual contact occurred within the time frame alleged in the Indictment. We review a sufficiency of the evidence challenge in a jury trial under a strict standard. We view all of the evidence in the light most favorable to the verdict, and we will overturn a conviction "only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge." United States v. Jimenez-Villasenor, 270 F.3d 554, 558 (8th Cir. 2001).

The Indictment alleged that "[o]n or about the 28th day of December, 1999, . . . . the defendant, Darrell Lee Miller, an Indian, did knowingly engage in and cause sexual contact by another person who was also an Indian and who was a minor child less than twelve years of age . . . [i]n violation of Title 18, United States Code, Sections 1153 & 2244(a)(2) & (c)." (R. at 1.) Miller argues that the specification of "on or about the 28th day of December, 1999," in the Indictment, coupled with the jury instruction that informed the jury that the evidence must show, beyond a reasonable doubt, that the offense charged was committed reasonably near the date in the Indictment, made the date a material element of the charged crime. As such, Miller argues, the government failed to meet its burden of proving that the sexual contact occurred reasonably near December 28, 1999, because the counselor testified that A.B. told him that the sexual contact had occurred around Halloween, which the counselor understood to mean Halloween 2000.

We need not determine whether the date was a material element of the offense, see United States v. Turner, 975 F.2d 490, 495 (8th Cir. 1992) ("[A] variance between the date in the indictment and the proof is not fatal if the proof shows that the acts charged were committed within the statute of limitations and prior to the return date of the indictment, as long as the date was not a material element of the crime charged."), cert. denied, 506 U.S. 1082 (1993), because even if it was, the government's proof satisfied the date element. A.B. repeatedly testified, despite Miller's attorney's attempts to get her to testify otherwise, that Miller had forced her to have sexual contact with him a couple of days before New Year's Day 2000. The jury was free to believe A.B.'s testimony, and we will not second-guess a jury's credibility determinations on appeal. United States v. Rayl, 270 F.3d 709, 713 (8th Cir. 2001) ("This issue of witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact." (internal quotation omitted)). Furthermore, the counselor's testimony does not undermine A.B.'s testimony; the counselor only assumed that A.B. was referring to Halloween 2000. Accordingly, we conclude that A.B.'s testimony was sufficient to support the jury's finding that Miller

engaged in sexual contact with a minor under the age of twelve on or around December 28, 1999. Rayl, 270 F.3d at 713 (upholding conviction for enticing a minor to engage in sexually explicit conduct to produce a visual depiction, in violation of 18 U.S.C. § 2251(a), where the only evidence that pictures were taken was a minor's testimony that the defendant took nude pictures of her and she saw the pictures); United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001) (holding that "a victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt" in an abusive sexual contact case).

Miller next challenges the two-level enhancement applied to his base offense level under Sentencing Guideline § 2A3.4. Because the district court determined that the offense was committed by use of force, Miller's base offense level was 16. USSG § 2A3.4(a)(1). The district court added four levels to Miller's base offense level because A.B. was under the age of twelve at the time of the offense. USSG § 2A3.4(b)(1). Miller does not appeal either of these determinations. The district court increased Miller's base offense level by an additional two levels because it determined that "the victim was in the custody, care, or supervisory control of the defendant." USSG § 2A3.4(b)(3). Miller objected to this enhancement at sentencing and now appeals the district court's adverse ruling. Whether or not A.B. was in Miller's "custody, care, or supervisory control" is a factual issue that we review for clear error. United States v. Voice, 200 F.3d 584, 585 (8th Cir. 2000).

The district court found that the enhancement applied because A.B. referred to Miller as "Dad," Miller had been entrusted with A.B. and her brothers and sisters alone on a long-distance trip in the past, and Miller had a long-term relationship with A.B.'s mother, whom he lived with as husband and wife intermittently over a long period of time. The comments to the Sentencing Guidelines advise that "[s]ubsection (b)(3) is intended to have broad application and is to be applied whenever the victim is entrusted to the defendant, whether temporarily or permanently. . . . [T]he court should look to the actual relationship that existed between the defendant and the

victim and not simply to the legal status of the defendant-victim relationship." USSG § 2A3.4, comment. (n. 4).

A.B. and both of Miller's daughters testified that Miller lived with them for weeks or months at a time at the three different houses in which they lived during their lives. They each testified that he would leave and then return for similar periods of time and that when he was living with them, he slept with their mother. Miller had been a part of A.B.'s life since she was a young child. A.B. consistently referred to Miller as "Dad" throughout her testimony. Miller himself stated at the sentencing hearing that he went to Denver "to have my five children in Nebraska meet my – meet my four children in Denver so they could know that they're family," (Sent. Tr. at 17), even though two of the Nebraska children, including A.B., were not his children by blood. Miller's cousin referred to A.B. as one of Miller's children during her testimony, (Trial Tr. at 242), and one of Miller's daughters from Colorado testified that A.B. was her little sister, even though she was not blood related to A.B. at all, (Trial Tr. at 246).

Although Miller lived with Ms. Blackbird and her children on an intermittent basis, it was over a substantial period of time, virtually all of A.B.'s life. We believe that the evidence establishes that he was a father figure to A.B. and had "care, custody, or supervisory control" over her for purposes of § 2A3.4(b)(3). "[T]he focus of the guideline falls upon anyone who, for the purpose of abusive sexual contact, abuses even peripheral or transitory custody, care, or supervisory control of the victim. The enhancement recognizes the abuse itself as an additional evil in the offense." United States v. Chasenah, 23 F.3d 337, 339 (10th Cir. 1994) (upholding § 2A3.4(b)(3) enhancement where defendant was married to the victim's grandmother, was regarded as the victim's grandfather, lived in the same house as the victim, and victim's mother testified that all of the adults in the house had authority over the children); see also United States v. Balfany, 965 F.2d 575, 585 (8th Cir. 1992) (reversing district court's refusal to apply identical two-level enhancement

under § 2A3.1(b)(3) and noting that "Balfany effectively was S.N.'s stepfather, someone she should have been able to trust. Balfany not only abused S.N.; he abused his relationship to S.N. and her trust."). Looking at "the actual relationship that existed between the defendant and the victim," USSG § 2A3.4, comment. (n. 4), we cannot say that the district court clearly erred in imposing the two-level enhancement. See United States v. Castro-Romero, 964 F.2d 942, 944 (9th Cir.1992) (holding that a custodial relationship existed where the defendant was the victim's stepfather, he helped raise her, and she called him "Daddy").

## III.

We affirm Miller's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.