**UNITED STATES of America,
Plaintiff,**

v.

**Ted H. GRAUER, Defendant.**

**No. 3:10–cr–49.**

United States District Court,
S.D. Iowa,
Davenport Division.

Aug. 8, 2011.

Paul D. Scott, Brown & Scott, PLC, West Des Moines, IA, David R. Treimer, David R. Treimer Law Firm, Davenport, IA, for Defendant.

Clifford R. Cronk, Maureen McGuire, U.S. Attorney's Office, Davenport, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Ted Grauer's ("Defendant") Combined Motion for Judgment

of Acquittal, Mistrial and Motion for New Trial ("Def.'s Mot."), filed on June 10, 2011.[1] Clerk's No. 123. Defendant attached a supporting brief to his motion ("Def.'s Br."). Clerk's No. 123.1. The Government filed a response to the motion on June 20, 2011 ("Gov'ts Resp."). Clerk's No. 124. The matter is fully submitted.

## I. PROCEDURAL BACKGROUND

On September 14, 2010, a grand jury returned a superseding indictment that charged Defendant with one count of attempted enticement of a minor to engage in illicit sexual activities, in violation of 18 U.S.C. § 2422(b) ("Count 1"), two counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) ("Counts 2 and 3"), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) ("Count 4"). Clerk's No. 17. On May 31, 2011, Defendant stood trial on these charges. Clerk's No. 108. The lawyers for both parties presented On June 3, 2011, the jury returned verdicts of guilty on Counts 1 and 4, and not guilty on Counts 2 and 3. Clerk's No. 121. At the close of the Government's case-in-chief, and again at the close of all the evidence, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* Trial Tr.[2] at 457, 589. The Court denied Defendant's motions. *See id.* at 459, 589.

Defendant now renews his motion for judgment of acquittal on Counts 1 and 4. Regarding Count 1, Defendant argues that the Government failed to present sufficient evidence that he believed Jenny[3] was under the age of eighteen or that he actually attempted to entice her to engage in illegal sexual activity. *See* Def.'s Mot. ¶¶ 4, 5. As to Count 4, Defendant argues that the Government failed to present sufficient evidence that Defendant knew the individuals depicted in the images found on his computer were minors. *See id.* ¶¶ 6, 7.

In the alternative, Defendant requests a new trial, pursuant to Federal Rule of Criminal Procedure 33. *See id.* ¶ 12. Defendant claims he is entitled to a new trial because the jury's verdicts on Counts 1 and 4 were against the weight of the evidence, and because the Court made several erroneous evidentiary rulings that combined to deprive him of a fair trial. *See* Def.'s Br. at 5. In response, the Government argues that there was sufficient evidence to support the jury's verdicts, the verdicts were consistent with the weight of the evidence, and that the Court's evidentiary rulings were correct. *See* Gov'ts Resp. at 6–8.

## II. MOTION FOR JUDGMENT OF ACQUITTAL

### A. *Relevant Law*

This Court must enter a judgment of acquittal if the evidence presented

---

1. Although Defendant's motion includes a request for a mistrial, no motion for a mistrial was made during trial. Further, because granting a new trial would also result in the Court vacating the existing judgment, *see* Fed. R.Crim.P.33, the Court sees no difference between a motion for new trial and a post-trial motion for mistrial. Thus, the Court will simply treat Defendant's motion as a request for a judgment of acquittal, or in the alternative, a new trial.

2. All transcript citations refer to the daily unedited transcript provided to the Court by the court reporter.

3. The charges against Defendant stem from a series of Internet conversations between Defendant and Deputy Jessup Schroeder. During these conversations Deputy Schroeder posed as a fourteen-year-old girl named Jenny by using the screen name "lil_jenny_gurl13." Throughout this order, the Court will refer to this persona as "Jenny."

at trial is insufficient to sustain a conviction. Fed.R.Crim.P. 29(a); *United States v. Water,* 413 F.3d 812, 816 (8th Cir.2005). "This standard is 'very strict' and a jury's verdict should not be overturned lightly." [4] *United States v. Boesen,* 491 F.3d 852, 855 (8th Cir.2007) (quoting *United States v. Ellefson,* 419 F.3d 859, 862 (8th Cir.2005)). Therefore, "[a] motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cacioppo,* 460 F.3d 1012, 1021 (8th Cir.2006); *accord United States v. Moore,* 108 F.3d 878, 881 (8th Cir.1997) (instructing that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt").

■ In considering a motion for judgment of acquittal based on the sufficiency of the evidence presented at trial, the Court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile,* 109 F.3d 1304, 1310 (8th Cir.1997). The Court can overturn the jury's verdict only if " 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof' " on one or more of the essential elements of the crime charged. *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir.1995) (quoting *United States v. Nunn,* 940 F.2d 1128, 1131 (8th Cir.1991)). "This standard applies even when the conviction rests entirely on circumstantial evidence." *United States v. Davis,* 103 F.3d 660, 667 (8th Cir.1996). In reviewing the evidence presented to the jury, it is important to note that " '[t]he evidence need not exclude every reasonable hypothesis except guilt.' " *United States v. Baker,* 98 F.3d 330, 338 (8th Cir.1996) (quoting *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992)). Finally, it is not the Court's role to weigh the evidence or assess the credibility of witnesses, as these tasks belong to the jury alone. *See United States v. Ireland,* 62 F.3d 227, 230 (8th Cir.1995) (observing that the jury has the role of judging the credibility of witnesses and resolving any contradictions in the presented evidence).

### B. *Application*

#### 1. *Count 1.*

■ To gain a conviction for a violation of § 2422(b), the Government must prove beyond a reasonable doubt that Defendant: (1) "used a facility of interstate commerce, such as the internet or the telephone system;" (2) "knowingly used the facility of interstate commerce with the intent to persuade or entice a person to engage in illegal sexual activity;" and (3) "believed that the person he sought to persuade or entice was under the age of eighteen."

*United States v. Young,* 613 F.3d 735, 742 (8th Cir.2010) (quoting *United States v. Pierson,* 544 F.3d 933, 939 (8th Cir.2008), *cert. denied* —— U.S. ——, 129 S.Ct. 2431, 174 L.Ed.2d 229 (2009)). An attempt to commit an offense occurs when a defen-

4. Indeed, to do otherwise would risk displacing the jury as the principal trier of fact, thereby placing the Court in a role the Constitution expressly delegates to the people. In the sage words of a fellow district court, "[T]he jury is an institution of central importance in our system of government, and courts must jealously guard against encroachments on the jury's province. It is the jury to which the founders of this nation turned to fill the role of impartial fact finder. Its primacy is guaranteed by the United States Constitution, and the American jury system is our most vital day-to-day expression of direct democracy." *United States v. Green,* 346 F.Supp.2d 259, 316 (D.Mass.2004), *vacated and remanded on other grounds by United States v. Pacheco,* 434 F.3d 106 (1st Cir.2006).

dant takes a substantial step towards the commission of an offense with the intent to commit the predicate offense. *See Young,* 613 F.3d at 742 (quoting *United States v. Spurlock,* 495 F.3d 1011, 1014 (8th Cir. 2007)). Here, there is no dispute that Defendant knowingly used the Internet—a facility of interstate commerce—to communicate with Jenny. Instead, Defendant challenges whether there was sufficient evidence to establish that: (1) he believed he was communicating with someone under the age of eighteen; and (2) he attempted to entice the person he was communicating with to engage in illicit sexual activity.

■ Defendant's claim that there was insufficient evidence to establish his belief that Jenny was under eighteen has little merit. "To prove knowledge, prosecutors often use circumstantial evidence because direct evidence of such scienter is seldom available." *United States v. Londondio,* 420 F.3d 777, 786 (8th Cir.2005) (citing *United States v. Thropay,* 394 F.3d 1004, 1006 (8th Cir.2005)). At trial, the Government introduced numerous chat-logs in which Jenny explicitly informed Defendant that she was fourteen. *See* Trial Tr. at 40, 63. Further, many of the chat-logs featured statements by Defendant indicating his belief that Jenny was fourteen, including examples of him questioning her about the extent of her sexual experience given her young age, and discussing his concern about her mother uncovering their relationship. *See id.* at 62, 136, 322. Finally, the Government entered into evidence a telephone call between Defendant and a female officer posing as Jenny, in which Defendant states: "You know you sound a little bit older than 14, not too much, but a little bit older than 14." *See* Gov't Ex. 12.

Defendant argues that these statements merely show he was engaged in role-play with Jenny, not that he actually believed she was fourteen. While that is a possible interpretation of the evidence, the jury did not reach that conclusion. Instead, the jury determined that Defendant meant what he said, and that his statements established beyond a reasonable doubt that he believed Jenny was under eighteen. Viewing the evidence in the light most favorable to the Government, the evidence was sufficient to support the jury's conclusion.

■ With regard to Defendant's attempted enticement, the appropriate inquiry focuses on the intended effect of Defendant's statements to Jenny, rather than on Defendant's actual intent to engage in sexual activity. *See Pierson,* 544 F.3d at 939 ("The government need not prove that the defendant intended to participate in a physical sexual act. It is sufficient for the government to prove that the defendant intended to persuade or entice a minor to engage in illegal sexual activity."). Here, the chat-logs submitted by the Government are replete with instances of Defendant asking Jenny if she would like to engage in sexual activity with him. *See* Trial Tr. at 127, 322, 343. Defendant also sent Jenny sexually explicit photographs, a "grooming"[5] behavior often used to entice a minor into sexual activity. *See Osborne v. Ohio,* 495 U.S. 103, 111 n. 7, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) ("Child pornography is often used as part of a method of seducing child victims. A child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by

---

5. "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual

activity." *United States v. Chambers,* 642 F.3d 588, 593 (7th Cir.2011) (citing *Doe v. Liberatore,* 478 F.Supp.2d 742, 749–50 (M.D.Pa.2007) and Sana Loue, *Legal and Epidemiological Aspects of Child Maltreatment,* 19 J. Legal Med. 471, 479 (1998)).

viewing other children having 'fun' participating in the activity." (internal citations omitted)). This evidence is sufficient to permit a jury to infer that Defendant intended to entice Jenny. *See Young*, 613 F.3d at 742 ("[T]he defendant's intent can be inferred when the defendant has online conversations of a sexual nature with a minor."); *United States v. Patten*, 397 F.3d 1100, 1102–03 (8th Cir.2005) (same). Finally, Defendant set up a meeting with Jenny, discussed engaging in sexual activity at this meeting, and then drove to the meeting place. *See* Trial Tr. at 173 (discussing meeting Jenny on a bike path to engage in sexual activity), 316 (discussing specific bike path), 357 (driving three hours to meeting place). This evidence is sufficient to establish that Defendant took a substantial step towards the commission of the offense. *See United States v. Myers*, 575 F.3d 801, 809 (8th Cir.2009) (finding substantial step where defendant drove several hours to meet purported minor to engage in sex); *Patten*, 397 F.3d at 1103 (same). Thus, the Court finds that there was sufficient evidence at trial to support the jury's guilty verdict on Count 1.

### 2. *Count 4.*

▇ To sustain a conviction for a violation of § 2252(a)(4)(B), the Government must prove beyond a reasonable doubt that Defendant "knowingly possess[ed] an item of child pornography, and [that] the item [was] transported in interstate or foreign commerce by any means." *United States v. White*, 506 F.3d 635, 641 (8th Cir.2007). The defendant's knowledge must be established "both to the sexually explicit nature of the material and to the age of the performers." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). On

the verdict form, the jury specifically identified eight files located on Defendant's computer that it determined contained child pornography. *See* Clerk's No. 121 at 4. Defendant argues that there was insufficient evidence to establish that he knew the individuals in these images and/or videos were minors.

▇ As an initial matter, there is no dispute that the Government presented sufficient evidence to establish that the individuals in many of the images found on Defendant's computer were actually minors. The Government offered expert testimony from Dr. Careyana Brenham, who testified that, based on the sexual development of the subjects contained therein, at least seven of the files submitted on Count 4 contained minors. *See* Trial Tr. at 242–49. Additionally, the Government presented evidence that the subjects in two of the files had been identified as minors by the National Center for Missing and Exploited Children. *See id.* at 203, 307. Nevertheless, Defendant argues that this evidence was only sufficient to establish that the material actually contained minors, not that he had knowledge of this fact.

▇ Defendant's argument appears to rest on the mistaken assumption that, to sustain his conviction, the Government must present direct evidence of Defendant's knowledge. *See* Def.'s Br. at 3. ("The jury must have improperly used evidence of actual age ... to convict the Defendant of the possession as alleged in Count 4 ...."). However, the Government is under no such obligation; instead, the jury can reasonably infer knowledge from the circumstances surrounding the offense. *See United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir.2005). Here, Defendant's mere possession of sexually explicit images containing individuals as young as nine years old [6] is likely sufficient to support an

---

**6.** The image entitled "120103341137508256884118403618434.- jpg" depicted an identified child pornography

inference that he knew the images contained minors. But the Government did not rest on this likelihood. Instead, it offered additional evidence that Defendant sent images to Jenny depicting individuals that, by his own admission, "look[ed] young" and that he "wonder[ed] if they are 18." *See* Trial Tr. at 164, 136. While these specific images were not the images submitted on Count 4, Defendant's statements demonstrated his interest in pornography depicting young and potentially underage subjects. The combination of these statements and the young age of the subjects in some of the material at issue in Count 4 was sufficient to permit the jury to infer that Defendant knew the subjects in certain files he possessed were under eighteen.[7]

### III. MOTION FOR NEW TRIAL

#### A. *Relevant Law*

 Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The district court is granted broad discretion in passing upon motions for new trial, and its decision is subject to reversal only for a clear abuse of discretion. *See United States v. Bass,* 478 F.3d 948, 951 (8th Cir.2007) (quoting *King v. Davis,* 980 F.2d 1236, 1237 (8th Cir.1992)). Unlike a motion for judgment of acquittal, the Court need not view the evidence in the light most favorable to the Government when considering a motion for a new trial. Rather, in assessing whether Defendant is entitled to a new trial on the

ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis,* 103 F.3d at 668; *United States v. Lanier,* 838 F.2d 281, 284–85 (8th Cir.1988) (per curiam). As the Eighth Circuit Court of Appeals explained in *United States v. Rodriguez:*

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d 1313, 1316 (8th Cir.1980). The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. We will not reverse the district court's decision absent a clear and manifest abuse of discretion. *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir.1985); *United States v. Ferguson,* 776 F.2d 217, 225 (8th Cir.1985); *United States v. Bohn,* 508 F.2d 1145, 1150 (8th Cir.1975).

812 F.2d 414, 417 (8th Cir.1987).

 The Eighth Circuit has also warned that the authority to grant a Rule 33 motion for new trial "should be used sparingly and with caution." *Lincoln,* 630

---

victim who was either eight or nine years old at the time the sexually explicit photograph found on Defendant's computer was taken. *See* Trial Tr. at 307.

**7.** Defendant also argues that one of the videos submitted on Count 4—the "Melissa video"—does not meet the statutory definition of sexually explicit material. Because the jury found

that, in addition to the "Melissa video," seven other files contained child pornography, the Court does not find it necessary to address this argument in relation to Defendant's motion for acquittal. However, as discussed *infra,* the Court finds that the "Melissa video" does, as a matter of law, meet the definition of "sexually explicit material" as defined in 18 U.S.C. § 2256(2)(A)(v).

F.2d at 1319. The mere fact that the "government's case is based upon circumstantial evidence does not by itself necessitate a new trial," nor does the fact that a defendant can point to "credibility problems" in some of the government's witnesses. *United States v. Davis,* 534 F.3d 903, 913 (8th Cir.2008). The district court's discretion in determining that a new trial is warranted "is abused if it does not take into account a matter that should have been given significant weight, gives significant weight to something improper or irrelevant, or 'commits a clear error of judgment.'" *Bass,* 478 F.3d at 951 (quoting *United States v. Dodd,* 391 F.3d 930, 934 (8th Cir.2004)).

### B. *Analysis*

Defendant argues that he is entitled to a new trial in the interest of justice because the jury's verdicts on Counts 1 and 4 were against the weight of the evidence and because several erroneous evidentiary rulings by the Court deprived him of a fair trial. Def.'s Mot. ¶¶ 12–18. With respect to the weight of the evidence, Defendant makes essentially the same arguments as he did in his motion for acquittal. As for the evidentiary rulings, Defendant claims that the Court first erred by excluding testimony from two proposed experts, Dr. Craig Rypma and Counselor Patrick McDonald. Defendant next asserts that the Court erred by failing to conduct a pretrial review of the images offered by the Government and that this failure ultimately resulted in the submission of materials to the jury on Count 4 that did not meet the statutory definition of sexually explicit conduct, as well as admission of numerous images that were irrelevant, cumulative, and prejudicial. The Court will address these arguments in turn.

### 1. *Weight of the evidence.*

Defendant argues that even if the Court finds sufficient evidence exists to sustain the jury's verdicts on Counts 1 and 4, it should grant him a new trial because "the evidence preponderates sufficiently heavily against the verdict[s] that a serious miscarriage of justice may have occurred...." Def.'s Mot. ¶ 18 (quoting *Lincoln,* 630 F.2d at 1319). Specifically, Defendant argues that the verdicts were the result of "improper inferences from the jury that the Defendant must have believed he was talking to a 14–year–old girl based on her statement that she was 14, and that he knowingly possessed child pornography because the individuals in the images look young." Def.'s Br. at 4. The Government responds by pointing to the numerous statements made by both Defendant and Jenny about her age, and by noting that it was appropriate for the jury to infer Defendant's knowledge from the conclusive evidence establishing the young ages of some of the individuals in the images possessed by Defendant.

 With respect to Count 1, the Court finds that the weight of the evidence supports the jury's verdict. Not only did Jenny tell Defendant that she was fourteen, but Defendant made numerous statements indicating his belief that she was fourteen. *See* Trial Tr. at 40 (Jenny telling Defendant she is fourteen), 343 (Defendant telling Jenny to erase her Internet history so her mother does not catch her); 108, 321–22 (Defendant stating that the police arrest guys that—like him—try to have sex with underage girls). The only evidence to the contrary was from Defendant's expert, Dr. Herriot. However, while Dr. Herriot did testify that the chatlogs were consistent with Internet fantasy role-play, Dr. Herriot was unable to state whether Defendant was actually participating in such role-play, or instead believed he was actually talking to a fourteen-year-old girl. *See* Trial Tr. at 493–94. Knowledge, like anything else, may be proved

using circumstantial evidence. *See Londondio*, 420 F.3d at 786. Here, the jury found that the circumstantial evidence— Defendant's own statements—established his belief that he was speaking to a minor. The evidence overwhelmingly supports this conclusion; thus, the Court will not disturb the jury's verdict on Count 1.

██ Regarding Count 4, the Court again finds that the verdict is consistent with the weight of the evidence. As an initial matter, the Court notes that it is not improper, as Defendant alleges, for a jury to infer that a defendant knew individuals in images were minors simply because they looked young. *Cf. United States v. Rayl*, 270 F.3d 709, 714 (8th Cir.2001) (stating that jury could make its own conclusions about age of individuals by looking at images); *United States v. Lantz*, No. CR–2–08–015, 2009 WL 1107708, at * 4 (S.D.Ohio Apr. 22, 2009) (slip copy) (finding that jury could infer defendant's knowledge that individuals in images were real children from circumstantial evidence). However, in this case, the Government offered additional evidence establishing that at least two of the electronic files contained identified minors, expert testimony that other subjects featured in the materials found on Defendant's computer were underage, and chat-logs establishing Defendant's interest in pornography depicting "young" looking girls. *See* Trial Tr. at 203, 307 (testimony that girl in one of the images found on Defendant's computer was nine, and stipulation that individual in "Melissa video" was a minor); 242–49 (testimony from Doctor Brenham that many of individuals in the material

found on Defendant's computer were minors); 171–72 (Defendant stating he thought an image of a girl that "was pretty young" was "sexy"). The Court acknowledges that the Defendant's expert witness, Dr. Arlan Rosenbloom, raised legitimate concerns about the methodology and conclusions of the Government's expert by testifying that it was not possible to determine the ages of individuals by only looking at their sexual development. *See* Trial Tr. at 537–38. However, even assuming that the jury found Dr. Rosenbloom's testimony more credible than the Government's expert, in light of the fact that two of the files undisputedly contained minors, and several of the other images contained subjects that, in the Court's view, looked quite young, the Court is satisfied that the jury's ultimate conclusion that Defendant knowingly possessed child pornography is consistent with the weight of the evidence.[8]

### 2. *Evidentiary rulings.*

██ Erroneous evidentiary rulings can be the basis for a new trial if the rulings affected a defendant's substantial rights or had more than a slight influence on the verdict. *See United States v. Honken*, 381 F.Supp.2d 936, 1005 (N.D.Iowa 2005) (citing *United States v. Mack*, 343 F.3d 929 (8th Cir.2003) and *United States v. Crenshaw*, 359 F.3d 977, 1003 (8th Cir.2004)). Here, the evidentiary rulings that Defendant complains of were fully litigated prior to trial. *See* Clerk's Nos. 75 (Order granting Government's Motion in Limine to exclude Defendant's proposed experts), 89 (Order denying Defendant's Motion in

---

**8.** Two additional facts strengthen the Courts faith in the jury's verdicts. The first is the diligent preparation and vigorous advocacy that both lawyers displayed throughout this case. The Court not only commends the lawyers for their excellent work, but also believes that it enabled the jury to better understand the issues as they related to the various counts, and ultimately, to reach just verdicts. Second, the fact that the jury acquitted Defendant on Counts 2 and 3, where—in the Court's view—the evidence of guilt was significantly weaker, reassures the Court that the jury independently examined the evidence for each count, and reached verdicts that were supported by the weight of the evidence.

Limine requesting pretrial review and exclusion of certain images). Defendant's current motion does not raise additional arguments as to how the Court's specific rulings were in error, but instead makes the same objections that were raised in his motions in limine. After reviewing the record, the Court can not find any material error in regard to these rulings and, thus, will provide only a brief summary of the issues.

■■■ Defendant provided notice that he intended to call two expert witnesses, Dr. Rypma and Counselor McDonald, to testify as to various problems that Defendant was having in his personal and professional life, how these problems affected his mental state, and how his Internet use was symptomatic of his mental state.[9] However, Defendant explicitly stated that neither expert would violate Federal Rule of Evidence 704(b) by stating "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged...." Clerk's Nos. 59.1 at 8, 65.1 at 8. The Court excluded these witnesses, finding their proposed testimony irrelevant. Specifically, the Court found the proposed testimony would only address why Defendant was spending long periods of time engaged in Internet-chat, not whether he had knowledge of whom he was chatting with. See Clerk's No. 75 at 6 ("However, the issue before the jury is not whether Defendant spent time in chatrooms or why, but rather what he did in these chatrooms."). After reviewing Defendant's motion and having observed the trial, the Court is confident that this proposed testimony would not have been relevant, and thus finds no error in its order excluding these witnesses from trial.

■■■ Defendant's next asserted error is that the Court admitted pornographic images that were not submitted to the jury on Count 4, and were thus cumulative, irrelevant, and prejudicial. Although not entirely clear which images Defendant is complaining of, to the extent that they are the pornographic images that he sent to Jenny, these images were relevant to Count 1 because they showed Defendant's attempt to entice. See United States v. Chambers, 642 F.3d 588, 593 (7th Cir.2011) (finding the fact that defendant sent pornography to a minor relevant to show his intent to entice the minor into sexual activity). To the extent that Defendant is in-

---

9. Specifically, Defendant presents Dr. Rypma's proposed testimony as follows:

The Defendant will call Dr. Craig Rypma to testify regarding providing Defendant with psychological counseling beginning in approximately 2006 to November of 2007 in which Defendant reported various problems including relationship problems, job stress financial, depression, excessive alcohol use, anxiousness, identity issues, thoughts of suicide, excessive internet use and other problems, and his determination that Defendant has Adjustment Disorder with Anxiety (DSM–IV 309.24) confirmed in the consultation provided in the instant case. The witness will testify that to a reasonable degree of certainty, Defendant's internet use is consistent with or symptomatic of his mental conditions and symptoms thereof.

Defendant presents the testimony of Counselor McDonald as follows:

The Defendant will call Mr. McDonald to testify as to his professional background and his professional relationship with the Defendant. The witness will testify to his professional impressions of the Defendant as they relate to his relationship with his wife and son and the general mental state of the Defendant during the time of the professional consultations. He will further state that the Defendant reported various problems including relationship problems, high anxiety, severe financial issues, depression, life confusion, alienation and severe and profound loss, as well as other problems, and his determination that Defendant has Adjustment Disorder with mixed anxiety and depressed mood (DSM–IV 309.28). Def.'s Mot. ¶ 13.

stead complaining that images found on his computer (but not sent to Jenny) were admitted as evidence, but were not ultimately submitted on the verdict form as images that the jury could consider for Count 4, the Court again finds no error. The Government initially offered, and the Court accepted, these images into evidence because they were alleged to be child pornography. Ultimately, the Court limited the number of images that the jury was to consider on Count 4 based solely on a stipulation by the parties, not because the additional images were irrelevant or cumulative. *See* Trial Tr. at 596–97. Thus, Defendant was not prejudiced, but instead benefitted from the fact that the jury was instructed to only consider some, but not all, of the potential child pornography found on his computer for Count 4. Further, even assuming that the Court did err by admitting these images, in light of the sexually explicit nature of the chat-logs and the content of the images that were submitted to the jury on Count 4, Defendant has failed to show how the admission of several additional pornographic images prejudiced him. *Cf. United States v. Hersh*, 297 F.3d 1233, 1243 (11th Cir.2002) (finding no support for the argument that a jury would find evidence of child pornography more prejudicial than evidence that the defendant had molested young boys). Thus, the Court concludes it did not err by admitting pornographic images into evidence that were not ultimately submitted to the jury on Count 4.

Finally, Defendant argues that the Court failed to conduct a pretrial review of the images offered by the Government, and that this ultimately resulted in a video being submitted on Count 4 that did not meet the statutory definition of sexually explicit conduct. With respect to the images that were submitted only on Count 4, the Court acknowledges that it should have reviewed them prior to trial.[10] *See Rayl*, 270 F.3d at 714 (cautioning district courts to conduct a preliminary review of materials offered by the Government to ensure they depict sexually explicit conduct as a matter of law, thus preventing the Government from submitting a large volume of prurient—but not obscene—materials along with a few images that could properly be considered child pornography). However, assuming that the Court erred by failing to conduct such a review, Defendant was not prejudiced because no images were submitted that, as a matter of law, did not meet the definition of sexually explicit conduct.

Defendant claims the "Melissa video" does not satisfy the statutory definition of sexually explicit conduct. *See* Def.'s Mot. ¶ 6. Sexually explicit conduct is defined as, among other things, "lascivious exhibition of the genitals or pubic area." *See* 18 U.S.C. § 2256(2)(A)(v). " 'A depiction of a child is a lascivious exhibition of the genitals when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer.' " *United States v. Kain*, 589 F.3d 945, 951 (8th Cir.2009) (quoting *Rayl*, 270 F.3d at

---

**10.** Defendant's motion in limine requesting a pretrial review of certain images focused largely on the images submitted on Counts 2 and 3–images sent by Defendant to Jenny on March 8 and March 25. *See* Clerk's No. 78. Thus, the Court denied Defendant's motion finding that the images at issue in Counts 2 and 3 would have been admissible on Count 1 regardless of whether the images also met the statutory definition of sexually explicit material. *See* Clerk's No. 89. However, upon reviewing Defendant's motion requesting pretrial review of the images, the Court realizes that Defendant also requested review of the images that the Government intended to offer on Count 4. The Court's admission of error is limited to its failure to review these images.

714). Whether images satisfy the definition of "lascivious exhibition of the genitals" is a question of law; whether material actually depicts "lascivious exhibition of the genitals" is a question of fact. *See Rayl,* 270 F.3d at 715 (citing *United States v. O'Malley,* 854 F.2d 1085, 1087 (8th Cir. 1988) and *United States v. Horn,* 187 F.3d 781, 789 (8th Cir.1999)). Recently, the Eighth Circuit held that videos showing minor females undressing satisfy, as a matter of law, the definition of "lascivious exhibition of the genitals" where, among other things, the defendant "adjusted the zoom feature in an attempt to tighten the focus of the camera on the area where the females' genitals would be...." *United States v. Johnson,* 639 F.3d 433, 440 (8th Cir. 2011).

In the "Melissa video," a minor plays on a playground while wearing a skirt. At one point, she hangs upside down exposing her genitals, and while she hangs, the camera zooms in to show a close up of her exposed genitals. The camera's focus on her genitals appears to serve no legitimate purpose other than to elicit a sexual response. *See United States v. Kemmerling,* 285 F.3d 644, 646 (8th Cir.2002) (finding image elicited a sexual response when it was not designed "for instance, simply to provide a clinical view of the portions of the children's anatomy"); *see also Horn,* 187 F.3d at 790 (finding "lascivious exhibition of the genitals" when video contained freeze frames on a girl's exposed genitals while she played on a jungle gym). Thus, consistent with *Johnson,* the Court is satisfied that the "Melissa video" meets the definition of "lascivious exhibition of the genitals." Accordingly, Defendant is not entitled to a new trial based on the Court's refusal to review the images found on his computer prior to trial as this error was harmless.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Acquittal and a New Trial (Clerk's No. 123) is DENIED.

IT IS SO ORDERED.